MARGARET COLES *vs.* THOMAS J. YORKS and Wife.

December 15, 1881.

**Mortgage by Husband and Wife—Material Alteration without Wife's Consent.**—A mortgage, purporting to have been executed by husband and wife, on July 24, 1873, contained the usual power of sale, and, among other things, authorized the mortgagee and his successors in interest, out of the money arising from such sale, to retain the principal and interest of the mortgage debt, "together with all costs and charges," paying the overplus to the mortgagor, etc., and then proceeded as follows: "And the said Thomas J. Yorks [the husband] doth further covenant and agree to and with the said party of the second part * * * to pay or cause to be paid" the mortgage debt, with all costs, expenses, taxes and assessments, "and the further sum of $50 solicitor's fees, in case of foreclosure." *Held*, that if, (as offered to be proved,) after the mortgage had been signed and acknowledged by the husband, and had been signed by the wife, and had gone out of her possession for the purpose of being delivered to the mortgagee, the words "and the further sum of $50 solicitor's fees, in case of foreclosure," were inserted in the mortgage by the husband, with the knowledge and consent of the mortgagee and in his presence, but without the knowledge and without the consent or assent then or at any time of the wife, such insertion was as to her a material alteration of the mortgage, and that as to her it would avoid the same.

**Same—When the Property is a Homestead.**—*Held, further,* that if, (as offered to be proved,) the mortgagors, at the time of and ever since the execution of the mortgage, resided on the mortgaged premises as their homestead, and the wife had never in any way released her homestead right to the same or any part thereof, and the mortgage was not given to secure any part of the purchase price thereof, then the mortgage is wholly invalid.

**Foreclosure of Mortgage on Homestead—Notice to Husband only.—** *Held, also,* that where husband and wife are residing upon land, of the fee of which he is owner, the possession is in him, though the land be his homestead, and he is, therefore, the proper person upon whom to serve the notice of foreclosure sale required by Gen. St. 1878, *c.* 81, § 5.

**Void Mortgage — Foreclosure—Bona-fide Purchaser.—***Held, further,* that the plaintiff, who purchased of the mortgagee, to whom the premises were struck off at the foreclosure sale, is not protected as a *bona-fide* purchaser without notice, unless the wife has by some conduct upon her part estopped herself to set up the alteration.

Appeal by defendants from an order of the district court for Washington county, *Crosby,* J., presiding, refusing a new trial.

*L. E. Thompson* and *J. B. Brisbin,* for appellants.

*McCluer & Marsh,* for respondents.

The addition to this mortgage, offered to be shown, was an immaterial alteration and could not affect the conveyance already made. *Van Horn* v. *Clark,* 11 Iowa, 465; *Kendall* v. *Kendall,* 12 Allen, 92.

BERRY, J. This is an action of ejectment. The plaintiff builds his title upon a mortgage purporting to have been executed by the defendants, who are husband and wife, on July 24, 1873. It was foreclosed by advertisement, the mortgaged premises being struck off to one Charles, by whom they were quitclaimed to the plaintiff. The mortgage contains the usual power authorizing a sale at public auction, and, among other things, authorizing the mortgagee and his successors in interest, "out of the moneys arising from such sale, to retain the principal and interest" of the mortgage debt, "together with all costs and charges," paying the overplus to the mortgagor, etc. It then proceeds as follows: "And the said Thomas J. Yorks doth further covenant and agree to and with the said party of the second part * * * to pay or cause to be paid" the mortgage debt, with all costs and expenses, taxes and assessments, "and the further sum of fifty (50) dollars solicitor's fees, in case of foreclosure of this mortgage."

The defendants offered to show that, long before, and at the time of, and ever since, the execution of the mortgage, they resided on the mortgaged premises as their homestead; that defendant Sarah has never in any way released her homestead right to the same, or any

v.28—30

part thereof; and that the mortgage was not given to secure any part of the purchase price thereof. They also offered to prove that, after the mortgage had been signed and acknowledged by defendant Thomas, and after it had been signed by defendant Sarah, and had gone out of her possession for the purpose of being delivered to the mortgagee, and had been handed to him for inspection, the words, "and the further sum of fifty (50) dollars solicitor's fees, in case of foreclosure of this mortgage," were inserted in the mortgage by defendant Thomas with the knowledge and consent of the mortgagee, and in his presence, but without the knowledge or consent of defendant Sarah; that she never knew of the alteration of the mortgage until since or about the time of the commencement of this action; and that she never consented or assented to the same. Upon plaintiff's objection, both these offers were rejected by the court. The contention of the defendants is that the insertion of these words, as offered to be shown, was a material alteration of the mortgage as respects the defendant Sarah; that the mortgage is, therefore, as to her, void; that the mortgaged premises being, as offered to be shown, the defendant's homestead, no valid mortgage of them could be made unless it was signed by defendant Sarah; and as the mortgage, as altered, was not signed by her, it is *wholly* invalid and void.

An alteration of a written instrument which enlarges the liability of its maker is a material alteration. *White* v. *Johns,* 24 Minn. 387. Section 45, chapter 81, Gen. St. 1878, contains provisions in regard to attorneys' and solicitors' fees for foreclosing mortgages; and section 46 reads as follows: " Where any such mortgage shall contain any covenant to pay, or any stipulation or provision authorizing or empowering the mortgagee, in case of any foreclosure sale of the mortgaged premises, to retain, any sum such as is in this act provided as an attorney's or solicitor's fee, such mortgagee, or his heirs, executors, administrators or assigns, shall be entitled to collect or retain such fee upon the foreclosure of such mortgage, either by action or advertisement." Whatever might be the construction of the mortgage involved in this case, independent of these statutory provisions, —whether the solicitor's fees of $50 would or would not be included in the words "costs and charges,"—it is clearly the effect of these

provisions to make the mortgage, and the lien created by it, security for such fees, as well as for the mortgage debt; for, by the terms of the mortgage as altered, there is a covenant to pay. The result is that the words inserted by the alleged alteration in the mortgage enlarge the liability of defendant Sarah beyond what it was in the mortgage as she executed it. It is not necessary that her liability should be personal. It is sufficient if it be a liability in respect to or on account of any of her property, rights, or interests. As to her, the alteration offered to be proved would be clearly material, and, as to her, it would, therefore, avoid the mortgage. If the mortgage, as offered to be shown, is a mortgage of the homestead of defendants, it is void without her signature. Gen. St. 1878, *c.* 68, § 2. If it lacks her signature, or, in other words, if, having been signed by her, it has been materially altered, so that it is in law not signed by her as it reads, and is void as to her, it is as if she had not signed it at all, and is, therefore, wholly invalid. The offers were, therefore, in effect, offers to prove the invalidity of the mortgage and the consequent invalidity of the foreclosure and of the plaintiff's title. They were, therefore, competent, material and relevant, and it was error to reject them.

In case of foreclosure by advertisement, Gen. St. 1878, *c.* 81, § 5, requires that a copy of the notice of sale "shall be served in like manner as summons in civil actions in the district court, at least four weeks before the time of sale, on the person in possession of the mortgaged premises, if the same are actually occupied." When the fee of land has been acquired by a husband, it remains in him and he is the owner of it, notwithstanding it is his homestead. If he and his wife are residing upon land, of the fee of which he is owner, the possession is in him, though the land be his homestead; for the homestead law has not attempted to change the rule of the common law in this respect. In such case we are of opinion that he is the proper person upon whom the notice prescribed by statute should be served. If we are right, then the offer to show that no notice was served on the defendant Sarah was immaterial and was properly rejected. As the case comes up on a bill of exceptions, not purport-

ing to contain all the evidence, we may presume that proper service of notice upon defendant Thomas was proved.

The objection that the notice of sale was not dated is not well taken. The words "First publication August 22, 1879," printed at the head of the notice, are a sufficient dating.

One question remains to be considered, viz.: Is the plaintiff protected as a *bona fide* purchaser without notice? Not if the mortgage was altered, as defendants offered to show, unless defendant Sarah has, in some way, estopped herself to set up the alteration. If the alteration was made, the foreclosure was had under the mortgage as altered—the notice of foreclosure sale assuming to sell the mortgaged premises as well to satisfy the fee of $50 as to satisfy the principal and interest of the mortgage debt. But the mortgage, as altered, is not the deed or contract of defendant Sarah. She never signed the instrument as altered. It is as utterly invalid, as respects her, as if her signature had been forged; and if the mortgaged premises were (as offered to be proved) defendants' homestead, it is utterly invalid as a mortgage as respects both defendants. This result is, of course, subject to the qualification that her conduct may have been such as to have given such an appearance of validity to the altered mortgage that she would be estopped to question it. But no evidence of any such conduct *appears*, and, by Gen. St. 1878, *c.* 66, § 254, we are forbidden to *infer* that any was given. On the contrary, the defendant offered to show (and upon a question of estoppel the evidence would be competent) that the alteration was made without defendant Sarah's knowledge or consent; that she never consented or assented to it, and knew nothing about it until since or about the time of the commencement of this action.

It is unnecessary to pass upon the instructions to the jury, requested by defendants and refused by the court, further than to say that it does not appear from the bill of exceptions that facts were shown making them applicable to the case.

For the errors before indicated, the order denying a new trial is reversed, and a new trial awarded.