## SAWYER v. PERRY ET AL.

1. **Fraud:** NOT DISREGARDED FOR SAKE OF PROTECTING HOMESTEAD. Where a wife was the owner of land, including the homestead, and entrusted her whole business to her husband, and the husband made arrangements to secure a loan from plaintiff's assignor, to be secured by mortgage on the wife's land, promising that he and his wife would execute a note for the loan and a mortgage on the land, including the homestead, to secure the note, and the papers were so executed by the husband and wife as to lead plaintiff's assignor to suppose that they were executed in accordance with the understanding, and were sent to plaintiff's assignor, who thereupon forwarded the amount of the loan to the husband, *held* that the wife could not be heard to assert that her husband had no authority to sign the note, and that neither could take advantage of erasures in the mortgage, so made as not to be easily noticeable, and the effect of which would be to release the homestead from the lien of the mortgage.

2. **Attorney's Fee:** PROVISION IN NOTE AND MORTGAGE.   Where a note provided for an attorney's fee of twenty-five dollars, and the mortgage securing the note provided for a *reasonable* attorney's fee, in the absence of evidence as to what was a reasonable fee in the case, *held* that nothing more could be allowed than the twenty-five dollars provided in the note.

*Appeal from Poweshiek District Court.*

FRIDAY, DECEMBER 7.

ACTION in chancery to foreclose a mortgage.   There was a decree of foreclosure as to part of the land described in the mortgage, and a judgment against the mortgagors for the amount of the debt.   Plaintiff appeals.   The facts of the case are stated in the opinion.

*Clark & Cheshire,* for appellant.

*Haines & Lyman,* for appellee.

BECK, J.—I. The mortgage in suit covers eighty acres of land, and was given to secure a promissory note executed by defendants, Mary A. Perry and her husband, G. S. Perry, made payable to E. N. Perry, E. T. Nutter and II. Nutter, and transferred to plaintiff.   The payees of the note, and certain persons holding liens upon the land, are made defendants.   Mary A. Perry and her husband alone defend the action.   As defenses they allege that the title of the land is in the wife; that forty acres of the tract is their homestead; that the note was executed by the wife, and was afterward altered by the husband's signing it, and by the change of the word "I" to "we," so that it reads "we promise to pay," etc., instead of "I promise," etc., and that the husband did not join in the mortgage, which therefore fails to bind the homestead.   The correctness of the appellant's abstract, so far as it presents the evidence, being desputed by the appellees, we have examined the original evidence on file in this court, upon which we find the following facts:

1. FRAUD ; not disregarded for sake of profecting homestead.

G. S. Perry, being in want of money, visited the state of Maine, where the payees of the note resided, one of them being his brother, for the purpose of negotiating a loan. He proposed to the payees, in case they would loan him the money, to secure the payment by a mortgage upon the farm upon which he lived, near Grinnell, forty acres of which constituted the homestead of himself and wife. He advised the payees that the title of the land was in his wife, and promised, in case they would loan him the money, he and his wife would execute a mortgage upon the eighty acres constituting the farm upon which he lived, which should be a lien upon the homestead of himself and wife. He also promised that he and his wife would execute a promissory note for the money to be loaned. Upon their faith in these promises and representations, the payees agreed to loan the money to him. Thereupon he returned home, caused the note and mortgage to be executed and the mortgage to be duly acknowledged and recorded, and then sent both to the payees, and received in return the amount of the loan, $3,500.

II. The wife now insists that the note is void by reason of alterations which were made by the husband's signing it, and by changing the word "I" to "we." There is not one word of evidence tending to prove the alleged alteration last named. The scrivener who drew the note declares that he "cannot tell whether the "we" was written before the "I," or the "I" before the "we." He does not pronounce it an alteration. An inspection of the note throws no light upon the question of this alteration. The defendants, therefore, fail to establish it.

III. The wife testifies that it was her purpose to execute a note and mortgage to the payees in order to enable her husband to borrow the money. But she has only a meager recollection of the circumstances. She does not appear to know whether, under the arrangement between her and her husband, he was to sign the note with her. She does not pretend to deny that he was to sign it. She declares that her husband managed the farm, and, quoting her language, "did

my business.    I permitted him to do it in his own discretion and without much control from me." She further declares, in speaking of the transaction, that she entrusted it to her husband, as she did her other business. This evidence affords a complete explanation to the transaction, so far as the note is concerned.   The husband testifies that he signed the note after his wife had signed it, and then sent it to the payees. According to his wife's explicit declaration, this he was authorized to do, under her authority and permission in the management of the business.   She cannot now dispute the validity of the note, which was made and executed by both herself and her husband, in the exercise of his discretion under the plenary authority he held as her agent.   This point of the case demands no further attention.

IV. The husband insists that he joined in the mortgage no farther than to relinquish his interest in the land as a husband; i. e., to surrender his right of "dower." His name appears in the mortgage as joining with his wife in the conveyance.    But there are small marks drawn by a pen across his first name and the first letter of his surname, and the word" parties," as originally written, seems to have been altered in more than one place by changing it to the singular.· All these alterations are very indistinct, and fail to strike the attention upon even a reasonably careful reading.   It is quite clearly shown by the evidence of the scrivener who wrote the mortgage that these alterations were actually made before the instrument was signed by the parties.

As we have seen, the husband agreed to cause a mortgage to be executed to the payees of the note, which should be a lien upon the homestead of himself and wife.   He had, as we have also seen, the full authority of the wife to conduct the business.   In pursuance of this authority, and in fulfillment of this agreement, he sent the note and mortgage to the payees of the note, and, trusting in his honesty, they sent him $3,500, as they had agreed to do.   The alterations of the mortgage are so indistinct, and of such a character, that they

are well calculated to deceive. And the payees of the note were decieved by them. Shall the husband and wife reap the benefit of this gross fraud? It would be a reproach to the law and a defeat of justice if they were permitted to do so. But a most wholesome doctrine of equity stands in the way of all such attempts to defraud. It is the rule of estoppel, which Story declares "forms a very essential element in that fair dealings and rebuke of all fraudulent misrepresentations, which it is the boast of the courts of equity constantly to promote." 2 Eq. Juris., § 1533. Thus, "when a party by misrepresentations draws another into a contract, he may be compelled to make good the representation, if that be possible." Id. § 1538. The misrepresentation and fraud of the husband consisted in sending the note and mortgage to the payees in fulfillment of his solemn agreement, with alterations and erasures so made as to lead them to believe that the instrument created a lien on the homestead. The husband and wife would surely not claim that, if they had advised the payees of the note that the husband did not sign it, and that the mortgage did not bind the homestead, the money would have been sent them. The law will not permit the practice of such a fraud, but will compel them to make good their representations. The husband, as the active perpetrator in the fraud, can reap no advantage from it, and, as the wife entrusted the business without her control to her husband, she cannot enjoy gain or exemption from the consequences of the fraud. The familiar doctrine of equity upon which we base our conclusion needs no support here of adjudged cases. It cannot be questioned, and its application to this case is made plain by the facts. It is true that the law favors homestead rights. But the law will not permit such gross frauds to be perpetrated in their name, as is attempted in this case.

V. A question is made by defendants in regard to the sufficency of a deposition, which we do not pass upon, for the reason that our conclusion renders it unnecessary to consider the testimony which it presents.

VI. The husband and wife pleaded a counter claim against their co-defendants, two of the payees of the note. No notice seems to have been served upon the defendants requiring them to answer the counter claim, and they entered no appearance thereto, and no issue was joined thereon, and no consideration appears to have been given it in the court below. The abstract contains nothing touching this counter claim, except the answer or cross bill pleading it. Its correctness upon this point is not questioned, and nothing in regard to the same matter is found in the amended abstract. The subject requires no further attention.

VII. The note provides for an attorney's fee of twenty-five dollars, and the mortgage provides for a reasonable attorneys fee to be adjudged against the mortgagors. But the abstract fails to present any evidence as to the amount of the attorney's fee. We cannot determine the amount without evidence. The plaintiff, therefore, can be allowed no greater sum than is named in the note. That amount he may be allowed, and it may be included in the decree. The cause will be remanded to the court below for a decree foreclosing the mortgage against all the lands, and for a judgment against the maker of the note for the amount due thereon and attorney's fee, with costs; or, at plaintiffs option, such a decree may be rendered in this court.

2. ATTORNEY'S fee: provision in note and mortgage.

REVERSED.