IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

# MIDDLE DIVISION.

---

## NASHVILLE, DECEMBER TERM, 1886.

---

STEPHENS *v.* DAVIS.

(*Nashville.* December 9th, 1886.)

BILLS AND NOTES. *Alteration by detachment of condition written on stub. Forgery. Destroys negotiability.*

The fraudulent detachment from a negotiable promissory note, by the payee or his agent, of a "stub" on which is written, as part of the note, a condition for the maker's benefit, is a material alteration of the note, and a forgery; and avoids the note, even in the hands of an innocent indorsee, to whom it is subsequently transferred for value before maturity, and without notice of the alteration, or the condition.

Stephens *v.* Davis.

Cases cited and approved: Benedict *v.* Cowend, 49 N. Y., 396; Wait *v.* Pomeroy, 20 Mich., 425; Burchfiel *v.* Moore, 25 (Eng.) L. and .Eq., 123; State *v.* Stratton, 27 Iowa, 420.

FROM WILLIAMSON.

Appeal in error from Circuit Court of Williamson County. W. S. McLEMORE, J.

N. N. Cox for Stephens.

BOND & HENDERSON for Davis.

CALDWELL, J. Davis recovered judgment against Stephens, before a Justice of the Peace of Williamson County, on a promissory note for $225. On appeal to the Circuit Court judgment was again in favor of Davis, and Stephens appealed in error to this Court.

The Commission of Referees reported in favor of an affirmance, and the case is now heard upon exceptions to that report.

On the 24th of December, 1881, Stephens, who was a farmer in Williamson County, was approached by one Cartwright and constituted an agent for the sale of "Pulliam Patent Bolster Springs," and fifteen sets of said springs, estimated at $15 per set, were delivered to him (Stephens) to be sold.

Four days later one Terry, claiming to represent the same company represented by Cartwright, called

upon Stephens and demanded payment for the springs, insisting that Stephens had bought them.

Stephens denied that he had bought the springs, and very properly refused to pay for them. At length Terry prepared a note for $225, the price of the fifteen sets of springs, due in three months, and presented it to Stephens for his signature. Stephens, still being willing to sell the springs as agent, agreed to sign the note if Terry would insert therein the condition that he (Stephens) should have credit on the note, at maturity, for such of the springs as might then remain unsold. Terry agreed to the condition, but declined to put it in the face of the note, upon the ground that there was not sufficient "space in the note." He did write the condition, however, on the "stub" of the note (the note and stub attached being in a book of blank notes), and sign the same; whereupon, Stephens signed the note and delivered it to Terry with the stub attached—Terry saying at the time that the stub "should stay there if it was four yards long."

According to the manifest purpose of Terry the "stub," or condition, was cut from the note; and the note was by the payee, the Pulliam Patent Bolster Spring Company, indorsed in blank and delivered to Semple & Birge Manufacturing Company, in payment of a debt and to secure further credit. Without its indorsement the Semple & Birge Manufacturing Company sold and delivered the note to Davis, before maturity, at 25 per cent. discount.

18

When the note was presented for payment Stephens declined to pay any part of it, because the springs were worthless and none of them had been sold by him.

He defends this action by Davis for the collection of the note, mainly upon a special plea of *non est factum*, in which he admits that he signed the note, but avers that it has been altered and changed by separating it from the condition, etc.

Davis replies that the note is a perfect and negotiable instrument upon its face, and that he is an innocent holder.

The trial Judge charged the jury that if the condition "were upon the stub, easily removed without defacing the note, the defendant would not be entitled to relief, on account of his own negligence," and that Davis could recover, notwithstanding such condition, if he became the holder of the note before maturity, for valuable consideration, and without notice of any fact to arouse the suspicion of a prudent man — "that all was not right with the note."

This instruction was erroneous.

The condition was written contemporaneously with the note, by the agreement of the parties before the signing of the note; it was a substantive part of the note, and restricted its negotiability, the same as if the condition had been indorsed upon the face of the note. The severance of the condition, without the consent or knowledge of the maker, was a material alteration of the original

contract, to his prejudice, and therefore the act was forgery. The instrument sued upon is but a part of the contract between the parties, and could not be acquired and held as a negotiable note by any one. That the stub could be easily separated from the note can make no difference, as no rule of law required the maker to anticipate that the payee would commit a felony by the alteration. He could not be required to protect himself, in advance, against such an act on the part of the person with whom he contracted.

Similar, and we may say identical, questions have arisen in other States, and been decided in accordance with the views we here express.

*Benedict* v. *Cowden* was an action by an indorsee of a note against the maker. Defendant agreed to become the agent for a rake and tedder, and to sign a note for $200 with a provision in it that it should be paid out of the proceeds of the machines when sold. A note was presented in accordance with this agreement, with the condition as to payment at the bottom. There not being room for the signature below the condition, the maker was advised to sign the note above the condition, which he did, and delivered the note. Subsequently the condition was clipped from the note without the knowledge or consent of the maker, and the note was sold to the plaintiff for value, and without notice of the alteration. After a review of many authorities, the Court held:

"It follows, then, that the memorandum at the foot of the note in suit was an essential part of the note, and the severance of it from the note without consent of the defendant was the alteration of the note in a material point, and destroyed the note *even in the hands of an innocent indorsee.*" 49 N. Y., 396 (10 Am. R., 382).

In another case, under the signature on a note these words were indorsed: "If the machine should not be delivered, this note not to be paid." The machine was not delivered, but the condition was detached and the note transferred to an innocent holder. The Court said:

"The only question raised in this case is whether the destruction of a memorandum written under a promissory note, and qualifying it, vitiates the note in the hands of a *bona fide* holder having no knowledge of the alteration. We think it quite clear, upon the authorities, that the note and memorandum constituted but one contract, and were in law a single instrument.    *    *    * If it formed a part of the original contract, it was a material alteration to detach the memorandum and leave the note as if it had been absolute. And it is a principle well settled that such an alteration avoids the entire obligation." 20 Mich., 425 (4 Am. R., 395).

It is further said in the same case:

"There seems, at first, a plausibility in the argument that a party, by signing a note with a separate memorandum beneath, puts it in the

power of the holder to gain easier credit for the note than it would likely gain if altered in the body. But, as was well suggested in the argument, no one is bound to guard against every possibility of felony; and, practically, it is a matter of every day occurrence to feloniously alter negotiable paper as successfully by changes on the face as in any other way. * * * If a party makes a contract in such manner as is authorized by law, he has a right to object to being bound to any other. A *bona fide* holder, before maturity, is allowed to receive the genuine contract discharged from any equities attaching to the contract itself as between the original parties, but he cannot get a contract where none was made." *Ib.*, 397.

To sustain the conclusions reached in that case, the Court referred to several authorities, among them the case of *Burchfield* v. *Moore*, 25 Law and Eq., 123, where the Court said: "The negotiability of bills of exchange is to be favored, but with this view it is material that their purity should be preserved."

In the State of Iowa Stratton was indicted and convicted for forgery. The offense charged and proven was the fraudulent detachment of a material written condition from a promissory note, the condition having been written upon the same paper and contemporaneously with the note. The conviction was sustained in the Supreme Court of that State in an opinion delivered by Judge Dillon. 27 Iowa, 420 (1 Am. R., 282).

The report of the Commission of Referees is set aside, the judgment reversed, and the case remanded for a new trial. Davis will pay the costs of this Court.