EVANS *et al.* v. LAWTON *et al.*

(*Circuit Court, E. D. Missouri, N. D.* March 5, 1888.)

1. PRINCIPAL AND AGENT—CONTRACT OF AGENCY—ALTERATION—RIGHTS OF AGENT'S GUARANTOR.

A contract of agency in writing provided that the agent was to conduct a lumber-yard for the principals, they to supply him with stock, which he was to sell; sales, however, for "cash in all cases." K. indorsed this agreement, guarantying the "due performance" by the agent "of his obligations in the above contract." Shortly after the yard was opened, the agent began selling on credit, and continued to do so for several years, when he defaulted. The principals not only knew of these sales, but they warned the agent "to be cautious in giving credit," and told him "to watch his book-accounts, and keep

them closely collected." They also made him shipments under the contract, which they authorized him in express terms to sell on credit. *Held*, that the contract of employment had been materially altered, and that the guarantor was discharged.[1]

**2. SAME—LIABILITY OF GUARANTOR—CONSTRUCTION OF CONTRACT.**

Where the contract of agency makes it the duty of the agent to pay over whatever money was received in the course of the agency, a guaranty of the agent, in which the guarantor agrees generally that the agent will duly perform all the obligations imposed upon him by the contract of employment, is not to be construed as an assumption by the guarantor of a personal liability in any event for all money received by the agent, and not accounted for, simply because such accounting is "particularly" mentioned in the instrument out of abundant caution.

**3. SAME—LIABILITY OF AGENT TO PRINCIPAL—ACCOUNTING.**

Under a contract of agency it was provided that the agent was to open a yard for the purpose of selling the principals' lumber, which they undertook to supply him, and which he was to sell "for cash in all cases." The agent was to account for the wholesale price of the lumber, for his services, and for all expenses of running the yard, including freight, and he was to receive whatever the lumber sold for in excess of the wholesale price at which it was billed to him. Shortly after the business was opened, the agent, with the knowledge and subsequent ratification of the principals, made sales on credit. *Held*, on an accounting, that the agent was entitled to credit for the wholesale price of all lumber covered by outstanding bills as to which he had exercised due care in giving time, but not for money laid out by him for taxes and insurance.

In Equity.

*Frank Hagerman*, for complainants.

*Smoot & Pettingill*, for respondents.

THAYER, J. This is a bill for an accounting, brought by complainants against defendant Lawton, who at one time acted as their agent in selling lumber, and also against defendant Kellogg, who assumed the liability of a guarantor for the performance by Lawton of his duties as agent. The agreement under which Lawton acted as agent was entered into December 3, 1880. By the terms of the agreement Evans & Sheppard appointed Lawton their agent at Memphis, Mo., to conduct a lumber-yard. They agreed to supply the yard with lumber, laths, shingles, doors, etc., which Lawton was to sell for account of Evans and Sheppard on the following terms, to-wit: sales were to be made for cash in all cases. Lawton was to render full and true accounts of all sales made, and of all moneys received, and on the 15th and 30th days of each month he was to remit to Evans & Sheppard whatever moneys were in his hands received from the sale of lumber, etc. Lawton was to account to his principals for the wholesale price of the lumber shipped to him, and for his services, and for all expenses of running the lumber-yard, including freight, he was to receive whatever the lumber sold for in excess of the wholesale price at which it was billed to him. On the back of the agency contract was indorsed the following guaranty:

"In consideration of Evans & Sheppard now entering into the above contract, and in further consideration of one dollar to me paid by said Evans & Sheppard, the receipt whereof is hereby acknowledged, I do hereby guaranty

---

[1] See note at end of case.

the due performance on the part of said George H. Lawton, Senior, of his obligations in the above contract, and particularly that he shall duly account for and pay over to said Evans & Sheppard all moneys which shall be received by or paid to said George H. Lawton, Senior, for lumber and other merchandise hereafter furnished by Evans & Sheppard and sold and disposed of by said Lawton, Senior. Signed at the same time as the above contract, to which this guaranty refers, as witness my hand.

[Signed]                            "A. A. KELLOGG.
[Signed]                            "L. MOTT."

The principal question for determination is whether Kellogg has been discharged from all liability by reason of a change in the terms of the agreement between Evans & Sheppard and the their agent, made without his (Kellogg's) consent. The agreement required sales to be made for "cash in all cases." Defendant Kellogg insists that the agreement was subsequently modified without his knowledge or consent, so as to permit Lawton to sell on credit, and that he did so sell to a large extent. On this ground he founds his claim to be discharged from all liability.

Preliminary to a discussion of the main issue it is necessary to dispose of some incidental questions. It is suggested by complainants' counsel that Kellogg has not pleaded his right to a discharge on the ground above stated. This point, I think, is not well taken. All the facts on which the defense depend are clearly stated, and in view of such facts, and other matters also alleged, defendant Kellogg asks to be discharged without day. This is sufficient to render the defense available. Furthermore, it is said that "the guaranty was twofold," and that Kellogg "absolutely bound himself to pay all money received by Lawton," and the case of *Benjamin* v. *Hilliard*, 23 How. 149, is cited in support of the position. This statement is rather mystifying, and is not elaborated. The case cited does not explain what is meant. In that case a guaranty was given which counsel insisted should be read in the alternative as requiring the guarantor to stand responsible for the doing of one of two things. The court, however, construed it, not in the alternative, but as requiring the performance of both obligations. I fail to see that the case referred to has any application to the case at bar. The guaranty involved in this case is one by which Kellogg agrees generally that Lawton will duly perform all the obligations imposed upon him by the contract creating the agency, and particularly that he will account for and pay over all money received for lumber, etc. The last clause with reference to accounting for and paying over money did not impose any obligation in addition to that imposed by the first clause of the guaranty. As the agency contract made it the duty of Lawton to pay over whatever money was received from the sale of lumber, (or rather to pay over the wholesale price,) the first clause of the guaranty was as effectual as the last to secure the performance of that duty. The last clause of the guaranty was really unnecessary, and was probably inserted, not as imposing an additional obligation, but merely out of abundant caution. It will be observed from the form of the guaranty that the guarantor did not bind himself with Lawton to discharge all or any of the duties imposed by the agency contract. He guarantied that Law-

ton would duly perform all of the obligations assumed. Kellogg's undertaking was purely collateral. He was not a joint promisor; and it goes without saying that he was only bound for the due performance by Lawton of the precise contract to which the guaranty referred; and if that has been changed or modified to any extent without Kellogg's consent, he is discharged. Permission given by the complainants to their agent to sell lumber on credit to any extent, instead of for "cash in all cases," as the contract originally required, would clearly discharge the guarantor. The authorities on this point are, of course, numerous. I only mention *Miller* v. *Stewart*, 9 Wheat. 680; *Grant* v. *Smith*, 46 N. Y. 93; Baylies, Sur. 260, and cases cited.

This brings me to the main controversy,—whether the agency contract was modified by the parties thereto without the guarantor's consent. It appears from the testimony, without contradiction, that a large quantity of lumber was sold by Lawton on credit. Such sales began shortly after the agency was established, and continued for a period of several years, and until the agency was terminated. During almost the entire period complainants had knowledge that he was selling lumber on credit. That they had such information appears from their correspondence at an early period of the agency, and the fact is otherwise expressly admitted by them. There is a further admission by the complainants that in some few instances they expressly authorized sales to be made on credit. It is also admitted by one of the complainants that in conversation with Lawton he told him that "he must be cautious in the manner in which he gave credit," and that "he must watch his book-accounts, and keep them closely collected." Complainant's counsel contends, however, that mere knowledge of the fact that sales were being made on credit is something entirely different from a formal consent given that sales might be so made, and does not prove an alteration of the contract. In this he is right. The obligation to sell for "cash in all cases" was an obligation assumed by Lawton. If he violated that undertaking in some instances, and complainants were aware of the fact, they were not bound to terminate the agency on that account, or to sue him for a breach of the contract. They had a right to overlook occasional violations of the contract of that nature, and to continue further business relations under the contract, and by so doing the contract was not altered, or the guarantor discharged. So much may be conceded. *Kirby* v. *Studebaker*, 15 Ind. 45. But in this case the evidence shows something more than knowledge on the part of complainants that their agent was selling lumber on credit. In the light of the testimony it will not do to say that they were merely passive observers of occasional or repeated violations of the contract, which they were privileged to overlook without impairing their right to hold the guarantor. Lawton, as before stated, made a practice for several years of selling on credit; and such practice was not only known to the complainants, but on certain occasions they warned him "to be cautious in giving credit," and "to watch his book-accounts, and keep them closely collected." Only one inference, as it appears to me, can be drawn from such a course of dealing, and from such language, and that is that they

were willing to allow him to sell on credit if he exercised caution, and sold to trustworthy persons, and was vigilant in making collections. To this extent, in my judgment, the evidence shows that the contract was modified by consent of the parties thereto. Then, again, the plaintiffs admit that on several occasions they in express terms authorized lumber to be sold on credit, which appears to have been consigned to Lawton to be sold and accounted for under the terms of the agency contract; that is to say, he was to have all that was realized over and above the wholesale price at which the lumber was charged to him by complainants. This, as it appears to me, was also a departure by consent from one of the provisions of the contract, which required sales to be made for "cash in all cases." Upon the whole, and especially in view of the general permission which seems to have been given to sell to trustworthy persons on short credit, I conclude that Kellogg cannot be held under his guaranty. It is not a question whether he was prejudiced by the manner of making sales, but whether there was in point of fact such change assented to by the complainants, and not assented to by Kellogg. Of this I entertain no doubt, and accordingly dismiss the bill as to the guarantor.

From what has been said it follows that in stating the account between complainants and Lawton the latter should be given credit to the amount of the wholesale price of all lumber covered by bills now outstanding as to which it appears that Lawton exercised due care in extending credit. He is not entitled to any credit on account of overcharges on lumber consigned to him by the plaintiffs, as there is no evidence of any such overcharges. He is not entitled to credit on account of taxes and insurance, as those were expenses of the business which he assumed to pay out of his profits. With respect to the additional credit of $100, claimed for the two lots of land, it is sufficient to say that the evidence will not warrant a finding that they were worth more than $400, the sum already credited on that account.

A final decree may be drawn in accordance with these views, and submitted for approval; or, if the parties fail to agree in stating the account, a reference will be ordered to a master to state the same as herein indicated.

### NOTE.

WRITTEN INSTRUMENTS—ALTERATION. A material alteration of a contract of guaranty will release the surety. Osborne v. Van Houten, (Mich.) 8 N. W. Rep. 77. Material alteration made by one of the parties without knowledge or consent of the other, after signing, but before delivery, is fatal. Pew v. Laughlin, 3 Fed. Rep. 39. No recovery can be had on a promissory note that has been materially altered. Bank v. Clark, (Iowa,) 1 N. W. Rep. 491, even though innocently done, Davis v. Eppler, (Kan.) 16 Pac. Rep. 793. But where the alterations have been erased before transfer, a *bona fide* holder may recover thereon. Shephard v. Whetstone, (Iowa,) 1 N. W. Rep. 753. Writing changing indorser into guarantor is material alteration. Belden v. Hann, (Iowa,) 15 N. W. Rep. 591. Adding seal to name of maker is material where it affects nature of contract, or the running of statute of limitations. Rawson v. Davidson, (Mich.) 14 N. W. Rep. 565. Adding figure "7" to indicate rate of interest, when note was not to bear interest, is material, Davis v. Henry, (Neb.) 14 N. W. Rep. 523; or adding, "after maturity shall draw ten per cent. interest," Wyerhauser v. Dun, (N. Y.) 2 N. E. Rep. 274; or erasing "order" and inserting "bearer" after execution, Needles v. Shaffer, (Iowa,) 14 N. W. Rep. 129. Alteration of note by being signed by one as joint maker, after execution by the original maker, is material, and will defeat the instrument. Sullivan v. Rudisill, (Iowa,) 18 N. W. Rep. 856. Alteration by writing in place of payment, is material, Charlton v. Reed, (Iowa,) 16 N. W. Rep. 64; Townsend v. Wagon

Co., (Neb.) 7 N. W. Rep. 274; or any alteration of the contract of the indorser in a part which may in any event become material, is fatal. Id. Where a contract which is written on same paper modifying the note is detached, and the note transferred, this is a material alteration, and there can be no recovery. Davis v. Henry, (Neb.) 14 N. W. Rep. 523. Where a material alteration is apparent on the face of a promissory note, offered in evidence, the question as to whether such alteration was made before or after the execution and delivery is for the jury. Bank v. Morrison, (Neb.) 22 N. W. Rep. 782. Where the payee of a note altered the same and transferred it before due to a *bona fide* purchaser, it was held that such alteration vitiated the note, and there could be no recovery thereon. Bank v. Shaffer, (Neb.) 1 N. W. Rep. 980; Horn v. Bank, (Kan.) 4 Pac. Rep. 1022. Adding the name of another maker to a note, without the consent of those already bound, is a material alteration. Singleton v. McQuerry, (Ky.) 2 S. W. Rep. 652. Where no explanation is given of a material erasure of a note for the payment of money there can be no recovery thereon. Hood's Appeal, (Pa.) 7 Atl. Rep. 137. See, also, as to what is a material alteration, Coles v. Yorks, (Minn.) 10 N. W. Rep. 775; Osgood v. Stevenson, (Mass.) 9 N. E. Rep. 825; Crawford v. Bank, (N. Y.) 2 N. E. Rep. 881; Johnson v. Moore, (Kan.) 5 Pac. Rep. 406; Stephens v. Davis, (Tenn.) 2 S. W. Rep. 382. Where a promissory note has been rendered void by a material alteration, made without fraudulent intent, the payee may recover upon the original consideration, and may establish the indebtedness as though no note had been executed therefor, by any evidence he may have, either written or oral, which has not been vitiated by the alteration. Gordon v. Robertson, (Wis.) 4 N. W. Rep. 579; Morrison v. Huggins, (Iowa,) Id. 854; Sullivan v. Rudisill, (Iowa,) 18 N. W. Rep. 856. Immaterial alterations, as filling blanks in a contract with the name of the party thereto, will not avoid the contract, not changing its legal effect. Briscoe v. Reynolds, (Iowa,) 2 N. W. Rep. 529; Rowley v. Jewett, (Iowa,) 9 N. W. Rep. 353; Canon v. Grigsby, (Ill.) 5 N. E. Rep. 362; Bank v. Carson, (Mich.) 27 N. W. Rep. 589. An interlineation made by a stranger, of the words "or bearer" after the name of the payee, in a note, has no effect upon the rights or liabilities of the parties. Andrews v. Calloway, (Ark.) 7 S. W. Rep. 449. Figures in margin of promissory note are no part of it, and alteration does not vitiate, Harvester Co. v. McLean, (Wis.) 15 N. W. Rep. 177; and it has been held that obtaining the signing of another name, as co-surety is not material alteration, and will not relieve the first surety. Ward v. Hackett, (Minn.) 14 N. W. Rep. 578. It has been held that where a mortgage was executed by husband and wife of her land for the accommodation of a partnership of which the husband is a member, and as security for the payment of a negotiable promissory note made by the husband to his partner, and indorsed by the partner for the same purpose, and to which note the partner, before negotiating it, adds the wife's name as a maker without the consent or knowledge of herself or husband, such note is not thereby avoided as against one who, in ignorance of the note having been so altered, lends money to the partnership upon the security of the note and mortgage. Mersman v. Werges, 5 Sup. Ct. Rep. 65. If an alteration of a promissory note is not material, it matters not with what intent it was made, for under no circumstances can it in any way affect the liabilities of the parties. Fuller v. Green, (Wis.) 24 N. W. Rep. 907. The extension by alteration of the time of payment of a promissory note is not such an alteration of the note as will avoid it, the maker being free to pay the note on or before such day, and the payee being restrained from compelling payment before that time. Drexler v. Smith, 30 Fed. Rep. 754. The burden of proof as to an alteration is upon the party asserting it. Odell v. Gallup, (Iowa,) 17 N. W. Rep. 502; Gordon v. Robertson, (Wis.) 4 N. W. Rep. 579; Cox v. Palmer, 3 Fed. Rep. 16. In a civil action a preponderance of evidence is all that is necessary to establish a fraudulent alteration. Coit v. Churchill, (Iowa,) 16 N. W. Rep. 147. See, also, on the general subject of the alteration of written instruments, Sawyer v. Perry, (Iowa,) 17 N. W. Rep. 497; Woodworth v. Anderson, (Iowa,) 19 N. W. Rep. 296; Scofield v. Ford, (Iowa,) 9 N. W. Rep. 309; Martin v. Insurance Co., (N. Y.) 5 N. E. Rep. 338; Church v. Fowle, (Mass.) 6 N. E. Rep. 764; Martin v. Insurance Co., (N. Y.) 5 N. E. Rep. 338; Martin v. Mining Co., (Nev.) 3 Pac. Rep. 488; Arguello v. Bours, (Cal.) 8 Pac. Rep. 49; Pereau v. Frederick, (Neb.) 22 N. W. Rep. 235.