LANDON v. HALCOMB. (No. 8330.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 19, 1916.)

1. ALTERATION OF INSTRUMENTS ⊙➾9—NOTE—"ALTERATION."

Where the plaintiff's assignor and defendant, parties to a contract or order with a note attached, intended and understood that the note was not to be detached, its detachment for the purpose of negotiations was a material "alteration" of the note.

[Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 47–53; Dec. Dig. ⊙➾9.

For other definitions, see Words and Phrases, First and Second Series, Alteration.]

2. BILLS AND NOTES ⊙➾378 — BONA FIDE HOLDER—DEFENSE—ALTERATION OF NOTE.

A material alteration of a note precludes any claim on the part of the holder to protection as an innocent purchaser for value without notice.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 985–992; Dec. Dig. ⊙➾378.]

3. BILLS AND NOTES ⊙➾520—SUFFICIENCY OF EVIDENCE—FRAUD.

Evidence in a suit on a note detached from a written contract or order executed by defendants and plaintiff's assignor, held to sustain a finding that the contract or order had been obtained for the fraudulent purpose of getting possession of the note and realizing on it by transfer to a third party.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1813, 1832, 1836, 1837; Dec. Dig. ⊙➾520.]

4. BILLS AND NOTES ⊙➾525—SUFFICIENCY OF EVIDENCE—BONA FIDE PURCHASER.

Evidence in such suit held to sustain a finding that the plaintiff was not an innocent purchaser of the note before maturity without notice of any defense thereto.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1832–1839; Dec. Dig. ⊙➾525.]

5. EVIDENCE ⊙➾75—PRESUMPTION—FAILURE TO PRODUCE EVIDENCE.

The failure of a party to produce evidence within his control raises the presumption that if produced it would operate against him.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 95; Dec. Dig. ⊙➾75.]

6. BILLS AND NOTES ⊙➾525—GOOD FAITH—CIRCUMSTANTIAL EVIDENCE.

In an action in a suit on a note, the issue of the plaintiff's bad faith in its purchase, like the issue of his assignor's fraud in obtaining it, could be established by circumstantial evidence.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1832–1839; Dec. Dig. ⊙➾525.]

Appeal from Wise County Court; J. W. Walker, Judge.

Action by A. C. Landon against V. S. Halcomb. Judgment for defendant, and plaintiff appeals. Affirmed.

R. E. Carswell, of Decatur, for appellant. Ratliff & Spencer, of Decatur, for appellee.

DUNKLIN, J. V. S. Halcomb, the proprietor of a drug store in the town of Bridgeport, gave a written order to the Vernon Advertising Company of Schell City, Mo., for a piano, a set of silver, fountain pens, and advertising matter to be shipped by the company to Halcomb, and attached to the order was Halcomb's promissory note, payable to the advertising company, or order, for $400. The note and order were on the same piece of paper, but were separated by a perforated line. The order reads as follows:

The Vernon Advertising Company, of Schell City, Mo.

Pianos Direct From the Factory.

Town, Bridgeport. State, Texas. 6/23/1914. County, Wise. Post Office, Bridgeport, Tex.

Gentlemen: Upon approval of this order, please deliver to me at your earliest convenience, f. o. b. factory or distributing point, the goods described in this order, with the understanding that this is to be the exclusive order for this town, I or we understand that this order cannot be countermanded. This order shall contain the following goods:

1 piano (guaranteed for 10 years).
2,500 duplicate tickets.
250 piano circulars.
250 nomination letters.
1 piano stool.
288 fountain pens.
250 pen circulars.
Merchant's instructions.
1 26 pc. silver set.
250 silver set circulars.
2,500 trade cards.
Contestants' instructions.
Price $400, Payable Five Payments.

We guarantee the sale of 288 fountain pens at $1.50 each by the close of the contest: Provided, the contest is run at least 26 weeks from opening date according to the advertised plans as per regular printed circulars furnished by the Vernon Advertising Company and awards all prizes accordingly, reports the gross sales of pens each 30 days, during the contest and makes each and every payment on the date or within 5 days from the date when due. In case the undersigned should for any reason desire to close the contest before all the pens have been sold, then the Vernon Advertising Company agrees to purchase all pens remaining unsold. The undersigned hereby accepts the above conditions and agrees that failure on his part to fulfill any of the above conditions will and does hereby release the Vernon Advertising Company, of Schell City, Mo., from any liability on this contract.

We hereby appoint the undersigned as agent for the Vernon Piano at Bridgeport, Texas, and agree to pay him a commission of $50.00 on all sales made at the regular retail price of $350.00, or through said agent, commission payable out of the first money received from such sale. No other agreements or conditions not embraced in this regular printed form will be accepted or recognized. This order is taken in duplicate.

[Signed]                               V. S. Halcomb.
By B. Kupton, Representative.

It appears that these documents were executed by Halcomb in pursuance of an advertising scheme suggested and proposed by a traveling agent of the advertising company.

The present suit was instituted by A. C. Landon, residing at St. Louis, Mo., against Halcomb upon the note so executed which had been detached from the written order. The plaintiff alleged that he was an innocent purchaser of the note for value before ma-

turity, and from a judgment in favor of the defendant, the plaintiff has appealed.

The evidence showed beyond controversy that the defendant received 144 of the fountain pens and practically all the other articles mentioned in the order, except the piano and stool; and that defendant, in pursuance of the advertising scheme planned and arranged by the company, advertised to give away the piano and other articles as prizes; that the piano and stool never reached Bridgeport in time to be used in accordance with such advertising, although the defendant made repeated demands therefor; that later the piano did arrive at Bridgeport, consigned to shipper's order, but that the advertising company failed and refused to send defendant any bill of lading for said piano, and in the absence of which the defendant was unable to get it, and in consequence of which the defendant never received it.

The case was submitted to a jury upon special issues, and the jury found that the articles received by the defendant were of no value; that the advertising company at the time said contract was made did not intend to comply with its contract to ship the goods mentioned in the order; that the company entered into the contract for the fraudulent purpose of getting possession of the notes and realizing thereon by transferring the same to some other person. The jury further found that the plaintiff, Landon, was not a purchaser of the note in the usual course of trade and in good faith for value, and that at the time he purchased it he had notice that the same was given as a consideration for the obligation contained in the written order referred to above, and that the advertising company had obtained the note for the fraudulent purpose of cheating defendant. The jury further found that it was the intention of the parties to said note and written order at the time those instruments were executed and delivered that the same were to remain attached, together, as they were attached when executed, and to remain so until the obligations of both parties were fully complied with, and that the note was detached from the order without defendant's consent. The jury further found that at the time plaintiff purchased the note he had notice that the same had been attached to said order when those instruments were executed and delivered, and that the same had been detached without the consent of the defendant. They further found that the goods mentioned in the order, and for which the note was given, were intended to be used in furtherance of a lottery scheme, and that plaintiff knew of that fact at the time he bought the note, and that the separation of the note from the order was a material alteration.

The facts so found by the jury were pleaded, substantially, by Halcomb as defenses to the suit. All the findings of the jury have been attacked by appellant as being unsupported by the evidence, and the contention is made that the evidence conclusively shows that plaintiff was an innocent purchaser of the note before maturity for value without notice of any defenses thereto.

[1, 2] The evidence shows conclusively that the note in suit and the order for goods embodying contractual obligations on the part of the Vernon Advertising Company, as well as on the part of defendant, Halcomb, which was originally attached thereto, were parts and parcels of one contract. If at the time the contract was executed the parties thereto intended and understood that the note was to remain permanently attached to the order, as found by the jury, then it follows that the separation of the order from the note for the purpose of negotiating the note was a material alteration of the note which precluded any claim on the part of plaintiff that he should be protected as an innocent purchaser and holder of the note for value without notice of any defense thereto. Baldwin v. Haskell Nat. Bank, 104 Tex. 122, 133 S. W. 864, 134 S. W. 1178; Otto v. Halff, 89 Tex. 384, 34 S. W. 910, 59 Am. St. Rep. 56; 1 Ruling Case Law, p. 990; 2 Corpus Juris. 1176 and 1210; Rochford v. McGee, 16 S. D. 606, 94 N. W. 695, 61 L. R. A. 335, 102 Am. St. Rep. 719. And this is true notwithstanding the fact that the order was attached to the note by a perforated line, thus rendering the separation of the two instruments in such a manner as possibly to mislead the purchaser of the note. Stephens v. Davis, 85 Tenn. 271, 2 S. W. 382; First Nat. Bank v. Dorsey, 166 S. W. 54; Bothell v. Schweitzer, 84 Neb. 271, 120 N. W. 1129, 22 L. R. A. (N. S.) 263, 133 Am. St. Rep. 623.

[3, 4] We are of the opinion, further, that the evidence was sufficient to support the findings referred to above, and also the further finding by the jury that plaintiff was not an innocent purchaser and holder of the note. While testimony introduced by plaintiff to refute the latter finding was positive in terms, yet there were circumstances which tended to show the contrary and which presented more than a mere suspicion that such testimony was untrue. The purchase of the note in St. Louis, Mo., within three days after its execution, in Bridgeport, Tex., for an admitted discount of 12½ per cent., the failure of plaintiff to show how the indebtedness for which the note was further discounted, as claimed by plaintiff, arose, his failure to show what, if any, investigation he made to determine the solvency of the maker of the note before he purchased it, his implied denial of a lifelong and intimate acquaintance with Boatwright, the manager of the Vernon Advertising Company, as established by several disinterested witnesses residing in Schell City, Mo., and his further implied denial that he was in the habit of making frequent trips

to Schell City where Boatwright conducted the business of payee of the note, as testified to by several of the same witnesses, were some of the circumstances which tended to impeach the alleged good faith of plaintiff in the purchase of the note.

[5] Pertinent to the failure of plaintiff to explain fully the discount of the principal of the note in his purchase and his failure to explain what investigation, if any, he made with respect to the solvency of the maker before he purchased the note, we wish to cite the familiar rule that a failure of a party to produce evidence within his control raises the presumption, under circumstances like the present suit, that if produced it would operate against him. Mitchell v. Napier, 22 Tex. 120; G., H. & S. A. Ry. v. Young, 45 Tex. Civ. App. 430, 100 S. W. 993.

[6] The issue of bad faith in the purchase of the note, like the issue of fraud, could be established by circumstantial evidence.

The findings of the jury indicated above were decisive of the whole case in favor of appellee, and therefore the judgment is affirmed.

Affirmed.