CLARENCE A. BURLEY, Assignee, Respondent, v. S. M. HITT *et al.*, Appellants.

Kansas City Court of Appeals, May 15, 1893.

1. **Principal and Surety:** CHANGE OF CONTRACT WITH AGENT: SUBROGATION: INJURY. Defendant Hitt entered into a contract of agency with plaintiff's assignor and the other defendants became his sureties for the faithful performance of the contract. Subsequently the assignor authorized Hitt to retain money (he might need) which the contract provided he should remit. *Held*:

   (1) The sureties were discharged.

   (2) *Arguendo*, that the provisions of a contract having a tendency to secure the creditor are such securities as by the doctrine of subrogation enure to the surety, and release of such provision discharges the surety.

   (3) If the creditor's interference authorizes the performance in some other way than the contract provides, the sureties are discharged without regard to whether they are injured thereby or not.

2. **Principal and Agent:** GENERAL MANAGER. The fact that one is general manager of a company implies power and authority to manage its business, and the power and authority to make a contract authorizes him to release, waive or vary it.

*Appeal from the Jackson Circuit Court.*—Hon. C. O. Tichenor, Special Judge.

Reversed.

*Lipscomb & Rust,* for appellants.

If Briscoe had the authority to make the contract allowing Hitt to retain $100 of the company's money, he had the right to modify it so as to allow him to retain more. "The same power which enabled him to make it was sufficient to enable him to release it." *Indianapolis Rolling Mill Co. v. Railroad,* 120 U. S. 256; *Sparks v. Transfer Co.,* 104 Mo. 539; 17 American & English Encyclopedia of Law, pp. 130, 135.

*Ashley & Gilbert,* for respondent.

In consideration of the bond, the company conferred the office and its emoluments, and it neither directly nor indirectly guarantees to the sureties that which they guarantee to it, that their principal shall perform the duties of his office. Brandt on Suretyship & Guaranty [Ed. '78] secs. 369, 474, pp. 496, 614; *Watertown Fire Ins. Co. v. Simmons,* 131 Mass. 85; *Railroad v. Shaeffer,* 59 Pa. St. 350; *State v. Atherton,* 40 Mo. 209; Murfree on Official Bonds, sec. 415, p. 294; *Taylor v. Bank of Kentucky,* 211 Marshall (Ky.), 565; *Creighton v. Rankin,* 7 Clark & Finnelly 325, 346.

Ellison, J.—The defendants, Evans and Orr, are sureties of defendant Hitt. Plaintiff is the assignee of the Chicago Safe and Lock Company. Judgment was rendered against the defendants and the sureties appealed.

The Chicago Safe and Lock Company employed defendant Hitt as the general manager of its "Kansas

City office, to manage the Kansas City branch of their business for the sale of all goods and wares manufactured by them." His employment was by written contract wherein it was provided, among other things, that he should make reports to the company daily of all sales made; and that on the last day of each month he should furnish to the company a full and correct account of all goods sold and in stock, "together with all surplus cash on hand over and above $100, after paying all expenses." He gave a bond for the faithful performance of this contract and all its duties and obligations, and providing that he should "promptly pay all liabilities arising under and growing out of said contract." The provisions of the contract and bond were determined and agreed upon by Hitt and one Briscoe, the latter being the general manager of the Chicago Safe and Lock Company. After the first month Hitt failed to remit the surplus cash on hand over and above $100 and expenses, as the contract provided he should do. The first "balance sheet" sent in by Hitt showed him to be overdrawn in the sum of $17 or $18 Briscoe then came out to Kansas City and directed him not to allow his statements to disclose that he had "overdrawn;" but authorized him to hold back money that he might need over and above that which it was provided in the contract he might retain; that he could make a ticket of the amount, which he could put in his safe and carry as cash. In other words, Briscoe, as general manager, authorized Hitt to retain the money (he might need) which the contract provided he should remit. The question for decision is whether this discharges the defendant sureties? We answer the question in the affirmative. We must assume that the nature and provisions of the contract were considered by the sureties when they entered into their engagement, and that such provisions governed

them in their conclusion to become sureties. Among the provisions of the contract the sureties saw that their principal was required to make monthly statements and remittances of money which he should collect for the company. This provision was a cautionary safety clause not only for the company, but in its operations would amount to a security for the sureties. It is a familiar principle of equity, now frequently applied in law, that the surety is entitled to all securities which the creditor has from the principal debtor. *Schell City Bank v. Reed, ante*, p. 94. Such securities may consist not alone in mortgages or credits, but may be the provisions of a contract, the tendency of which is to secure the creditor. For instance, in *Taylor v. Jeter*, 23 Mo. 244, a builder by the terms of his contract was to furnish the material and build a house for the owner. The contract provided that the owner should make certain payments to the builder at certain times as the work progressed, and retain a certain sum for sixty days after the work was finished. The owner, however, paid the builder before the building was completed, and mechanics' liens were afterwards put upon the building which he was compelled to discharge. He sued the builder's surety who had engaged for the builder's faithful performance of the contract, and it was held that the provisions of the contract enabling the owner to retain the money was a security for the performance of the work and that in parting with it he discharged the surety. So a like holding was had and a like view taken in the case of *Calvert v. London Dock Co.*, 2 Keen, 639.

2 Brandt on Suretyship, sec. 397, stated that: "A surety for the completion of work to be performed by the principal, whereby the terms of the contract the principal is to be paid by installments, is discharged if the principal is paid faster than the contract provides."

"The surety," says the author, "is thereby deprived of the inducement which the principal would have to perform the contract in due time." To the same effect are the cases of *Bragg v. Shain*, 49 Cal. 131; *Truckee Lodge v. Wood*, 14 Neb. 293; *Carson Opera House v. Miller*, 16 Nev. 327; and *Simonson v. Grant*, 36 Minn. 439.

Now to apply the reasoning and the principle of these cases to the case at bar. In employments of service there are at least two inducements and incentives to faithful service in accordance with the agreement for such service. These are the desire a man has in a moral point of view to perform his obligation and the fear he has of loss of employment if he fails to do so. Both these inducements to perform the contract in this cause were brought to naught by the act of plaintiff. Instead of saying to Hitt, you will break your contract and promise; you will be guilty of a breach of faith, and we will discharge you if you retain our money, the company says to him, that it will be no breach of faith, and that he may set aside the terms of the contract and retain the money. The company had no right to withdraw these inducements by expressly authorizing Hitt not to perform his agreement, by releasing him from his undertaking.

It is, however, said that the company did not release Hitt from paying the money, but only from the mode and time of payment. But it was from this cause, the sureties can well say, that the defalcation has occurred. But the inforcement of the rule governing the contracts of sureties does not require that the surety shall be injured by the act of the creditor. If the creditor interferes with the performance of the contract and by such act authorizes or directs the principal to perform in some other way, the sureties are discharged without

regard to whether they were in fact injured by the interference.

We are aware of that class of cases where indulgence, forbearance, passiveness on the part of the creditor will not release the surety. Such is the case of *Railroad v. Shaeffer*, 59 Pa. St. 350, on which plaintiff largely relies. That case is totally different from this. In that case the railroad officers knew that the cashier was not making monthly reports as required by the rules of the company and referred to in his official bond. The company, after repeated failures of the cashier to make reports, dismissed him, but neglected to notify his sureties of its action or of the cashier's defalcation. This was held to be mere forbearance and not to discharge the sureties, and with such conclusion we find no fault; but we are unable to see where it applies to the facts before us. Neither do we consider the case of *Chew v. Ellengood*, 86 Mo. 260, applicable to the facts of this case.

II. We have assumed Brisco to be the company in the foregoing, and the remaining question is whether he was such an agent as possessed the power or authority to bind the company in waiving the provisions of the contract as set forth herein. He was shown to be the general manager of the company's business, and that he was managing its affairs, and that he entered into the contract as it was originally made, and that he did actively supervise this office at Kansas City. The evidence as to Briscoe's agency is quite short, but also quite comprehensive in its effect and bearing. He is stated to be the general manager of the company. This certainly implies power and authority to manage the company's business. But he is also stated to have entered into this contract for the company, and the case concedes that he had authority so to do. The

same power and authority which enabled him to make the contract, if not withdrawn, authorizes him to release or waive or vary it. *Rolling Mill v. Railroad*, 120 U. S. 256.

We are thus led to the conclusion that the sureties were discharged and the judgment should be reversed. All concur.