THE TRADESMEN'S NATIONAL BANK OF THE CITY OF NEW YORK, Appellant, *v.* NATIONAL SURETY COMPANY, Respondent.

PRINCIPAL AND SURETY — RELEASE OF SURETY. A bond given by an agent for the faithful performance of his duty to account for property delivered to him and to assign invoices for sales thereof, providing that the obligee shall deliver bills of lading to the obligor only in trust to act as agent for the purpose of receiving and making a sale of the property represented thereby, and that invoices of the sales shall be immediately assigned to the obligee, imports that the proceeds of the sales will be collected from the purchasers by the obligee, and its act in subsequently authorizing the obligor to hold the property in trust for the purpose of selling it, upon his promise that he would deliver the proceeds of the sales within a fixed time, is such an enlargement of the risk assumed by a surety upon the bond as will, in case of a breach, release it from liability thereon.

*Tradesmen's Nat. Bank* v. *Nat. Surety Co.*, 54 App. Div. 631, affirmed.

(Argued January 23, 1902; decided January 31, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 5, 1900, affirming a judgment in favor of defendant entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John M. Stearns* and *John J. Adams* for appellant. Appellant is entitled to a reversal of the judgment as there was evidence supporting its cause of action. (*Ware* v. *Dos Passos*, 162 N. Y. 281; *Scofield* v. *Hernandez*, 47 N. Y. 313; *Place* v. *Hayward*, 117 N. Y. 487; *McNally* v. *P. Ins. Co.*, 137 N. Y. 394; *Pratt* v. *D. H. & M. F. Ins. Co.*, 130 N. Y. 212; *Stiegerwald* v. *M. R. Co.*, 50 App. Div. 488; *Costello* v. *T. A. R. R. Co.*, 161 N. Y. 320; *Smith* v. *Molleson*, 148 N. Y. 246; *U. C. Sav. Bank* v. *Young*, 161 N. Y. 30; *Bennett* v. *Draper*, 139 N. Y. 272.) The use of the word "proceeds" in the trust receipts taken by the Clinton Bank from Goldstein is not to be construed to mean that

the bank was to permit him to collect the moneys due from various customers for goods sold on credit and pay over the same when collected. (*Sattler* v. *Hallock*, 160 N. Y. 301; *Phelps* v. *Harris*, 101 U. S. 383; *Thompson's Appeal*, 89 Penn. St. 46; *Dow* v. *Whetten*, 8 Wend. 160; *Dow* v. *H. Ins. Co.*, 1 Hall, 166; *F. & M. Nat. Bank* v. *Logan*, 74 N. Y. 582; *Kain* v. *Larkin*, 141 N. Y. 151.) Even if the word "proceeds" in the trust receipts be construed to mean that the bank was to permit Goldstein to make collections, the defendant, nevertheless, is liable under its bond. (1 Am. & Eng. Ency. of Law, 355; *Higgins* v. *Moore*, 34 N. Y. 419.) The notice and proof of loss were sufficient. (*McManus* v. *W. A. Co.*, 43 App. Div. 559; May on Ins. § 469; *Petit* v. *G. Ins. Co.*, 98 Fed. Rep. 800; *G. F. Ins. Co.* v. *Seibert*, 56 N. E. Rep. 686; *N. F. Ins. Co.* v. *U. S. B. & L. Assn.*, 54 S. W. Rep. 714; *Faust* v. *A. F. Ins. Co.*, 91 Wis. 138; *O'Reilly* v. *G. M. L. Ins. Co.*, 60 N. Y. 169; *Taylor* v. *Æ. L. Ins. Co.*, 13 Gray, 434; *Bogardus* v. *N. Y. L. Ins. Co.*, 101 N. Y. 328; *Oakley* v. *Morton*, 11 N. Y. 25; *Hosley* v. *Black*, 28 N. Y. 438.)

*William B. Hornblower* and *Mark W. Potter* for respondent. The Clinton Bank and Goldstein did not conduct business as required by the bond and contemplated by the parties. The variance from the terms of the bond was inconsistent therewith, and there is no liability on the part of the defendant in connection with the transactions. (*Page* v. *Krekey*, 137 N. Y. 307; *Smith* v. *Molleson*, 148 N. Y. 241; *People* v. *Vilas*, 36 N. Y. 459; *People* v. *Pennock*, 60 N. Y. 421; *Paine* v. *Jones*, 76 N. Y. 274; *Henderson* v. *Marvin*, 31 Barb. 297; *Wilson* v. *Edwards*, 6 Lans. 134; *Goodrich* v. *Dunbar*, 17 Barb. 644; *Decatur* v. *Goodrich*, 44 Hun, 3; *G. & B. S. M. Co.* v. *Clinton*, 5 Biss. 324; 11 Fed. Cas. 79; *Zeperink* v. *Card*, 11 Fed. Rep. 295.) The referee properly overruled plaintiffs' contention that "proceeds" as used in the trust receipts meant "invoices." (*Belmont* v. *Ponvert*, 3 J. & S. 208.) Even if there had been no deviation in the

course of business from that contemplated by the bond, defendant would not be liable for the claims upon which the action was brought. (*Ward* v. *Stahl*, 81 N. Y. 406; *J. H. L. Ins. Co.* v. *Lowenberg*, 120 N. Y. 44.) There was a failure on the part of the Clinton Bank to comply with condition 6 of the bond and such failure was alone sufficient to make a recovery impossible. (*O'Reilly* v. *G. M. L. Ins. Co.*, 60 N. Y. 169.) It cannot be maintained that defendant waived its right to require notice and proof of loss under condition 6 of the bond. (*Bogardus* v. *N. Y. Life Ins. Co.*, 101 N. Y. 328; *Hosley* v. *Black*, 28 N. Y. 438; *Oakley* v. *Morton*, 11 N. Y. 25; *Schultz* v. *Depuy*, 3 Abb. Pr. 252; *Garvey* v. *Fowler*, 4 Sandf. 665; *Hatch* v. *Peet*, 23 Barb. 575; Code Civ. Pro. § 533.)

PARKER, Ch. J. This action was brought by plaintiffs, as assignee of the Clinton Bank, to recover of defendant, upon a bond in which Abraham Goldstein was principal, the sum of $12,010 claimed to have been advanced to or paid for the account of said Goldstein by the Clinton Bank. For some months prior to the execution of the bond, which bears date December 9th, 1897, Goldstein was accustomed to purchase flour in the west, which was sent to New York in the name of the shipper, drafts for the purchase price being drawn by the shipper directly to Goldstein and forwarded, with bills of lading attached, to the Clinton Bank, whereupon the Clinton Bank made loans to Goldstein sufficient to meet the drafts, by crediting him with the amount of such loans, paying the drafts and charging Goldstein with the amount so paid. The bank took Goldstein's promissory notes, payable on demand, for the amount so credited and paid out, and delivered to him the bills of lading for which Goldstein in turn gave to the bank trust receipts. The amount of business which Goldstein did at the beginning was small, but as it increased in volume the bank decided to require a bond from Goldstein, and shortly thereafter an application was

made to defendant, which gave a bond containing the following recitals :

" WHEREAS, the Clinton Bank honors such drafts and remits the amount thereof, holding bills of lading for such flour as security therefor ; and

" WHEREAS, before reimbursing the Clinton Bank said Goldstein is intrusted with said bills of lading for the purpose of delivering flour to purchasers ; and

" WHEREAS, in all such cases said Goldstein procures said bills of lading in trust, and to make such deliveries of flour as agent and representative of the Clinton Bank, all invoices for flour so sold and delivered being by the said Goldstein immediately transferred and assigned to said Clinton Bank ; and

" WHEREAS, said Clinton Bank requires security from said Goldstein to protect it against loss by reason of said Goldstein's failure to honestly account for flour delivered, and to assign invoices therefor."

Thus it appears that in stating the course of business between Goldstein and the Clinton Bank, for the conduct of which the defendant was to be liable, the recitals provided that Goldstein should immediately assign the invoices to the bank, not that he should collect the proceeds and pay them over to the bank within a fixed period. The obligation also provided that the principal, Goldstein, should " account to said Clinton Bank for all flour represented by bills of lading so delivered to him by said bank in trust, and assign to said bank invoices against the purchases thereof, and shall hold and save said bank harmless from and against any and all loss by reason of any breach or failure so to do."

And it further provided that the obligation was subject to certain conditions, among which were the following: " The bank shall deliver such bills of lading to said Goldstein only in trust, to act as agent and special representative of the bank for the purpose of receiving and making a sale of such flour as the agent of the bank, and for all bills of lading so delivered the bank shall take from said Goldstein a declaration in writing to that effect."

The subsequent course of business between the Clinton

Bank and Goldstein did not accord with the recitals and conditions of the bond, but instead the bank took from Goldstein a trust receipt stating in effect that he took the bills of lading in trust for the purpose of receiving and making sales of such flour as agent of the bank and turning over the proceeds within a given period. Such trust receipt, after acknowledging receipt from the Clinton Bank of certain bills of lading representing the number of barrels of flour named, read : " In consideration thereof I hereby agree to hold said property in trust for the purpose of selling the same to various parties with the understanding and promise that I will deliver the proceeds of said sale to said bank within ten to twenty days from the date hereof." In none of the trust receipts contained in this record was Goldstein required to turn over the proceeds within a less time than that designated in the receipt quoted from, while in some of the receipts the time was extended to forty days. The allegations of the complaint are in accord with the trust receipts and the evidence generally as to the course of business is to the effect that the bank intrusted the bills of lading to Goldstein under such trust receipts, thus enabling him to sell the flour in behalf of the bank, he returning to the bank the proceeds of the flour sold. Nor was he required to immediately return the proceeds, but was given a period of time varying from ten to forty days in which to do it. This was a risk of a very different character from that which the defendant assumed by its bond, which provided in effect that Goldstein should be intrusted with the bills of lading only for the purpose of making a sale of the flour, the bank collecting the proceeds of the sale from the purchaser, and under the authorities it so far differed from the course of business provided for by the bond as to preclude a recovery thereon. (*Page* v. *Krekey,* 137 N. Y. 307; *Smith* v. *Molleson,* 148 N. Y. 241).

The learned counsel for the appellant insists that the use of the word " proceeds " in the trust receipt taken by the Clinton Bank from Goldstein should be construed to mean that the bank was to permit him to collect the moneys due from

various customers for the goods sold on credit and pay over the same when collected ; that the word " proceeds," as used in the trust receipts, really meant " invoices." Obviously, this cannot·be so, for the legal definition of " proceeds " is money or other articles of value obtained from the sale of property, while an invoice is a written account of particular merchandise shipped or consigned to a purchaser, consignee or factor with the value, price or charges annexed. But if the word " proceeds" be susceptible of the meaning for which the appellant contends, such could not be accorded to it on this review in the light of the allegations in the complaint, which were to the effect that the flour was intrusted to Goldstein for the purpose of selling the same " and delivering to said Clinton Bank the money received by him for the same," an allegation which harmonizes with the natural and ordinary meaning given to the word " proceeds " as employed in the trust receipts and which under this record is controlling.

The judgment should be affirmed, with costs.

BARTLETT, HAIGHT, MARTIN, VANN, CULLEN and WERNER, JJ., concur.

Judgment affirmed.