# NATIONAL ACCEPTANCE COMPANY v. ROYAL INDEMNITY COMPANY.

Middle Section.   January 19, 1929.

Albert W. Stockell, of Nashville, for appellant.
White & Howard, of Nashville, for appellee.

FAW, P. J. By its bill in this case the complainant, National Acceptance Company, a Tennessee corporation, is seeking to recover of the defendant, Royal Indemnity Company, a New York corporation, the sum of $3134, with interest from January 13, 1927, upon a bond executed by the David-Mathis Motor Company as principal and the defendant Royal Indemnity Company as surety.

On final hearing, the Chancellor dismissed the bill and taxed the complainant and its surety with the costs, whereupon the com-

plainant brought the case to this court by appeal, and is here insisting, through assignments of error, brief, and oral argument of counsel, that the decree of the chancery court was erroneous and should be reversed.

The written "findings and opinion" of the Chancellor, made a part of the record, are as follows:

"This is a suit to recover $3134 on a bond executed for a consideration by the David-Mathis Motor Company (hereinafter called the Motor Company), as principal, and the Royal Indemnity Company as surety, to the National Acceptance Company, in the sum of five thousand dollars.

"The term's of the bond, in substance, are: That the National Acceptance Company will, from time to time, advance sums of money to the David-Mathis Motor Company, upon trust receipts executed by the said Motor Company to the National Acceptance Company, copy of which is attached and made a part of the bond, on certain motor vehicles placed in possession of the Motor Company, which they are to hold in trust as the property of the National Acceptance Company and return on demand; if the Motor Company shall comply with the terms of said agreement, the obligation to be void.

"The fifth condition or limitation in the bond, compliance with which is a condition precedent to recovery thereon, provides in substance that the National Acceptance Company shall, before the 10th day of each month, deliver to the Royal Indemnity Company a written statement of all motor vehicles delivered to the Motor Company under trust receipts during the preceding month.

"The trust receipt attached to and made part of the bond has a blank space for the name of the bank, distributor or factory delivering cars, acting for the National Acceptance Company, from whom said Motor Company received bill of lading on credit arranged by the National Acceptance Company. The Motor Company agreed in said receipt to hold the motor vehicles described therein in trust, as the property of the National Acceptance Company and to return same on demand. Copies of the trust receipts for the cars involved were called for and filed as a part of the bill, and they reveal on their face that these cars were received from the Chevrolet Motor Ohio Co. of Norwood, Ohio, acting for the National Acceptance Company for the account of the said David-Mathis Motor Company, the Chevrolet Motor Ohio Company's name being printed in the blank space referred to in the trust receipt made a part of the policy.

"The bill averred in substance that under this trust arrangement, complainant National Acceptance. Company advanced money on the Chevrolet automobiles involved, and that David-Mathis Motor Company placed the cars on the floor of its place of business and when they were checked the cars involved were missing, which had been placed in its possession, and that they had violated the terms of the bond by failing to return or pay for the cars on demand.

"The bill was amended so as to aver that the cars covered by said trust receipts had been delivered to the David-Mathis Motor Company by the factory as new cars, and were unloaded from the cars when they arrived and were stored in the warehouse at Watertown, Tennessee, and negotiable warehouse receipts issued therefor in the name of the David-Mathis Motor Company, which were endorsed by the said Motor Company and sent to the National Acceptance Company, accompanied by a draft drawn by the David-Mathis Motor Company upon the National Acceptance Company for the amount advanced to the David-Mathis Motor Company on each car, and that the draft and warehouse receipt was accompanied by a trust receipt properly executed by David-Mathis Motor Company, and upon receipt of these negotiable warehouse receipts properly endorsed, and the trust receipts, the money was advanced by complainant to David-Mathis Motor Company on the cars involved. The amended bill further averred that on presentation to the warehouse of the warehouse receipts the cars described therein were placed on the floor of the showroom of the garage to hold the cars in trust as the property of the National Acceptance Company until released from the trust in the manner recited in said trust receipts.

"There was a demurrer to the bill, all the grounds thereof being directed to the whole bill except one. There was a decree overruling the demurrer in general terms and requiring the defendant to answer. State v. Standard Oil Co., 120 Tenn., 108. The answer denied the right of the complainant to recover on the bond involved.

"All the cars involved were sold by the Chevrolet Motor Ohio Company, upon bills of lading with draft attached, and were financed by the General Motors Acceptance Company for the money it had advanced upon these cars, the cars being delivered by the General Motors Company to the David-Mathis Company. All of these trust receipts antedated the execution of the bond and the issuance of the trust receipts in the instant case.

"The cars involved were not delivered to the David-Mathis Motor Company by the National Acceptance Company. The National Acceptance Company did not pay the draft and take up the bills of lading for these cars when they were shipped by the Chevrolet Company. The National Acceptance Company did not store, nor at their instance were these cars stored in the warehouse and negotiable warehouse receipts issued to the David-Mathis Motor Company and by it endorced to the National Acceptance Company. The trust receipts involved were filled out by the David-Mathis Motor Company, put in an envelope with an insurance policy on the car, and a blank draft for the price of the car drawn on themselves and accepted by themselves, which was attached to the draft on the National Acceptance Company for the price of the car, and upon these papers, money was advanced to the David-Mathis Motor Company by the National Acceptance Company.

"All of the trust receipts involved bore dates on and intervening between September 28th and December 21st, 1926. On December 22, 1926, the National Acceptance Company notified the Royal Indemnity Company that it had delivered to the David-Mathis Motor Company on trust receipts the cars involved; and again on January 13, 1927, it notified the Royal Indemnity Company that on December 22, it had delivered the cars involved to the David-Mathis Motor Company on trust receipts under the bond. The Royal Indemnity Company had no notice or knowledge that the trust receipts involved would be issued in the manner stated, when the bond was executed.

"Bonds guaranteeing the fidelity of a person, executed for a consideration by companies engaged in the business of making bonds, are treated by the courts as insurance contracts when under construction with a view to ascertaining the nature and extent of the liability assumed, and such companies are not entitled to the favorable consideration accorded to gratuitous sureties. But, while this principle is well recognized and enforced, it has never been extended beyond the limits of the surety's engagements, and it cannot be invoked to refine away terms of a contract of clear and plain meaning. Policies of insurance are construed like other contracts, when it comes to giving effect to the intention and express language of the parties. R. R. v. Fidelity & Guaranty Co., 125 Tenn., 690; Seay v. Ga. Life Ins. Co., 132 Tenn., 676; Green v. Fidelity & Guaranty Co., 135 Tenn., 122.

"The distinguishing feature of a technical trust receipt, is that the party financing the operation takes title directly from a third person and not from the person giving the trust receipt.

Where the seller of property makes shipment to his own order, on bill of lading with draft attached, and the draft is paid by a third person, and then the property delivered to the dealer, and a trust receipt executed by him and delivered to the person taking up the draft and bill of lading, a trust relation as covered by the trust receipt is created between the dealer and the person financing the transaction. In a true trust receipt, title is never vested in the dealer. See Annotations 49 A. L. R., p. 283; 25 A. L. R., p. 332.

"If it be conceded that a trust receipt is created by the issuance of a trust receipt on cars in possession of a dealer, where he stores them in a warehouse and has negotiable warehouse receipts issued therefor, which he negotiates to the Financing Company, and executes to it a paper purporting on its face to be a trust receipt, as insisted in the amended bill, the case must fail in that aspect, because the record discloses that these cars were not placed in the warehouse and negotiable warehouse receipts issued therefor and endorsed to the complainant at the time it advanced the money on the trust receipts involved. This record reveals that the David-Mathis Motor Company never executed a trust receipt within the meaning of the law, to the National Acceptance Company. The National Acceptance Company notified the Royal Indemnity Company that they had delivered these cars to the David-Mathis Motor Company on trust receipts, but the record reveals that it did not and that it never had any sort of title to the cars before the execution of the paper involved.

"The Royal Indemnity Company is entitled to stand on its contract. Its contract obligated it to answer for money advanced by the National Acceptance Company upon trust receipts executed by the David-Mathis Motor Company, on the motor vehicles involved. The terms of the trust receipt made a part of the bond, and the bond itself does not cover such transactions in these cars, as the proof reveals, and the surety is not liable for the alleged loss.

"Decree accordingly.

"NEWMAN, Chancellor."

The complainant specifies the asserted errors upon which it relies in support of its general assignment that the chancery court erred in finding for the defendant and in dismissing the bill at complainant's cost as follows:

"1. The court erred in holding that the David-Mathis Motor Company did not violate and breach the terms of the trust agreement to secure which the bond was executed and

that the defendant Royal Indemnity Company was not liable for the default of its principal.

"2. The court erred in holding that the David-Mathis Motor Company did not execute any trust receipts to the National Acceptance Company within the meaning of the law on the automobiles described in the bill.

"3. The court erred in holding that the trust receipt attached to and made a part of the bond has a blank space for the name of the bank distributor or factory delivering cars acting for the National Acceptance Company from whom said Motor Company received bill of lading on credit arranged by the National Acceptance Company and (as) there is no trust receipt attached to and made a part of the bond whatever.

"4. The court erred in not finding as a fact and holding that the David-Mathis Motor Company had an equitable interest, later to be ripened into sole ownership, in the cars upon which it executed trust receipts as security for the amount of money borrowed of the complainant, and that under the terms of the bond it was obligated to discharge its trust agreement with the National Acceptance Company if necessary, by satisfying the prior lien wrongfully given the General Motors Acceptance Corporation."

Upon an examination of the entire record, we concur in the Chancellor's findings of fact and his conclusions with respect to the law applicable to the facts thus found.

When considered in connection with the Chancellor's "findings and opinion," the complainant's assignments of error (excepting the third assignment) do not challenge the Chancellor's findings of fact, but, when they are analyzed, it will be seen that they, in effect, merely question the Chancellor's conclusions of law, or his application of the law to the facts.

The third assignment, supra, as we understand it, is, in substance, that there is no trust receipt attached to and made a part of the bond, and therefore, the Chancellor erred in holding that the trust receipt attached to and made a part of the bond has a blank space for the name of the bank distributor or factory delivering cars acting for the National Acceptance Company from whom said Motor Company received a bill of lading on credit arranged by the National Acceptance Company.

The bond was produced and filed by Mr. Aymard, complainant's President, as an exhibit to his deposition, and was sent up in its original form as a part of the record. It is recited in the bond that copies of the trust receipts "are hereto attached and made a part hereof," but there are no such copies physically attached to the bond. It is apparent to the eye that a paper of some kind has been

pasted on the inside of the cover sheet of the bond and afterwards detached. There is no proof in the record that the paper thus attached and afterwards detached was a copy of a trust receipt, and no proof which tends to show whether the paper just mentioned was purposely removed or became detached by accident.

However, complainant filed, as Exhibit B to its bill, a copy of a form of trust receipt, and alleged that said Exhibit B was "a copy of the form of trust receipt referred to in the bond and used in said transactions;" and said Exhibit B is identical in form with all the instruments on which complainant relies as trust receipts in this case, and each of them, including said Exhibit B, has "a blank space for the name of the bank, distributor or factory delivering cars acting for the National Acceptance Company, etc.

Moreover, the record does not indicate that, in the chancery court, the complainant made, or sought to make, any point on the fact that copies of trust receipts were not physically attached to the bond. In other words, the question which complainant seeks to make by its third assignment of error is raised for the first time in this court.

For the reasons stated, the third assignment of error is overruled. Our ruling on the third assignment is placed on the grounds above stated without intending to leave the inference that this assignment would be good if the complainant had not filed Exhibit B, with the accompanying averment above quoted, and had made the question below. We think the reasons we have stated are a sufficient answer to the third assignment, and therefore deem it unnecessary to consider other reasons which might be urged in opposition to that assignment.

The gist of the Chancellor's opinion is embraced in the following statement, viz: "The Royal Indemnity Company is entitled to stand on its contract. Its contract obligated it to answer for money advanced by the National Acceptance Company upon trust receipts executed by the David-Mathis Motor Company on the motor vehicles involved. The terms of the trust receipts made a part of the bond and the bond itself does not cover such transactions on these cars as the proof reveals, and the surety is not liable for the alleged loss."

It is true, as insisted for complainant, that bonds of the character here involved, when executed for a consideration by companies engaged in that business, are, when considered with a view of ascertaining the nature and extent of the liability assumed, treated by the courts as insurance contracts, and the companies executing same are not in such cases entitled to the favorable consideration accorded to gratuitous sureties. Railroad v. Fidelity & Guaranty Co., 125 Tenn., 658, 690, 148 S. W., 671; Hunter v. Guaranty Co.,

129 Tenn., 572, 581, 167 S. W., 692; Green v. Fidelity & Guaranty Co., 135 Tenn., 117, 121, 185 S. W., 726.

But "policies of insurance should be construed, like other contracts, so as to give effect to the intention and express language of the parties." Seay v. Georgia Life Insurance Co., 132 Tenn., 673, 676, 179 S. W., 312; Green v. Fidelity & Guaranty Co., supra; Insurance Co. v. Nelson, 128 Tenn., 70, 157 S. W., 416; Doherty v. Surety Co., 1 Hig., 221, 226; Guarantee Co. of North America v. Mechanics Savings Bank & Trust Co., 183 U. S., 419, 46 L. Ed., 253, 262.

"Trust receipts," although of comparatively recent origin, are in common and extensive use in the commercial world as a form of security, with characteristics as well defined and distinctive as are those of chattel mortgages, but from which they differ in essential respects, the most prominent of which difference is that the holder of a trust receipt must derive his title from a person other than the one responsible for the satisfaction of the obligation which the property secures. True trust receipts have been very generally sustained by the courts as a valid form of security, but the holder of a so-called trust receipt which does not possess the essential characteristic above described has no better standing than the holder of an unregistered chattel mortgage. Many of the reported cases dealing with trust receipts are digested and collated in the annotations cited by the Chancellor, viz: 25 A. L. R., 332 and 49 A. L. R., 283. See also 1 Williston on Sales (2 Ed.), pp. 791-799, and an interesting and able essay on "The Trust Receipt as Security," by Karl T. Frederick, published (in two installments) in the Columbia Law Review for May and June, 1922.

The bond on which complainant is seeking a recovery in this case was manifestly intended to indemnify complainant against loss on account of advancements to the David-Mathis Motor Company upon true trust receipts, and not against loss on account of advancements made on the faith of instruments having no greater value as security than unregistered mortgages on chattels to which the mortgagor had no legal title—the legal title being vested in a third party as the holder of valid trust receipts thereon. Obviously the latter was a risk of a much more hazardous character than that which defendant assumed by its bond, and complainant was therefore properly denied a recovery. Tradesmen's National Bank v. National Surety Company, 169 N. Y., 563, 62 N. E., 670. The complainant's assignments of error are all overruled.

The defendant, Royal Indemnity Company, did not appeal from the decree of the chancery court, but, pursuing the practice sanctioned by the Act of 1927, ch. 68, defendant has assigned errors upon the failure of the Chancellor to find certain facts stated in

its assignments, and which, defendant asserts, are established by the record.

It is provided by chapter 68 of the Acts of 1927 (amending sec. 12, ch. 100, of the Acts of 1925) that

"The Court of Appeals shall not be limited to the consideration of such facts as were found or requested in the lower court, but it shall independently find and consider all material facts in the record, and either party, whether appellant or not, may assign error on the failure of the Chancellor to find any material fact, without regard to whether such facts were found or were requested in the lower court. This shall not apply to any case tried before court on oral testimony."

The position of the defendant, as stated in the brief of its counsel, is that the Chancellor's findings of fact are supported by the evidence and his conclusions of law are clearly correct, but that defendant is entitled to a finding of the record facts material to all the defenses pleaded in its answer, although it did not file a petition requesting additional findings of fact by the Chancellor.

The several defenses interposed by the defendant in its answer to the complainant's bill are summarized in defendant's brief as follows:

"1. That the so-called trust receipts upon which the losses were sustained were not issued and financed in a proper manner; that they were not trust receipts at all, and therefore were not covered by the bond.

"2. That the automobiles were not delivered to the principal in accordance with the recitals of the trust receipts, but the complainant falsely represented to the defendant surety that they were properly delivered; that this false representation made at the time the bond was put into effect, was made with the actual intent to deceive, and it increased the risk of loss. In fact the complainant's failure to comply with the recitals of the trust receipts, and other representations, actually caused the loss in this case.

"3. That the complainant attempted to put these alleged trust receipts under the bond after it had learned that the dealer had defaulted on several of its trust receipt transactions, and in fact two of the trust receipts now sued on were obtained by the complainant as a settlement for two other trust receipts which the dealer had defaulted. That another one of the trust receipts now sued on had been fraudulently issued and had been defaulted several months before the bond was put into effect, and although the complainant knew these facts it is attempting to unload its losses on this surety by

reporting that these bogus trust receipts were placed under the bond. That the complainant's fraudulent concealment of these material facts relieved this surety from any liability which might otherwise exist.

"4. That the complainant failed to comply with the second condition of the bond, which required it to immediately notify the surety of any default. That one of the so-called trust receipts had been breached in October, which was several months before the bonds took effect, and yet the complainant failed to report this loss until the following January.

"5. That the complainant failed to comply with the fourth condition of the bond, which required it to make a physical check every ten days of all the automobiles which it had placed in the possession of the principal, and to keep a written record of these physical checks.

"6. That the complainant had failed to comply with the fifth condition of the bond, which required it to furnish the surety a written statement of all motor vehicles delivered to the principal under trust receipt, and required it to furnish this written statement before the 10th day of each month for all cars which were delivered to the principal during the preceding calendar month.

"7. That the bond did not cover any losses sustained by reason of the fraudulent issuance of trust receipts, but only covered losses sustained by reason of the breach of a true and valid trust receipt, after the trust receipt had been properly issued and obtained by the complainant."

It is, to say the least, a matter of grave doubt whether it was intended, by the Act of 1927, ch. 68, supra, to impose upon this court the duty of finding facts not expressly found by the Chancellor in a case such as this; that is to say, a case where the facts found by the Chancellor in his written findings afford a sufficient legal predicate for his decree dismissing complainant's bill at complainant's cost. How this may be we shall not undertake to decide in this case, but will respond to defendant's assignments, treating them, however, as in the nature of a petition for additional findings of facts, without undertaking to determine (as defendant is asking us to do) whether the facts so found would or not afford distinct and independent grounds (in addition to that stated by the Chancellor) for the dismissal of complainant's bill. Holding, as we do, that the Chancellor's decree dismissing the bill is supported by the facts found by him, there is no occasion for this court to adjudge the legal effect of additional facts pleaded by the defendant and shown by the proof. On petition for certiorari, the Supreme Court will, as we understand the rules and

practice of that court, determine whether the decree is right, upon all the facts found, without regard to the particular view of the law which may have been applied to the facts by this court.

We find that the proof in the record shows the facts which will now be stated.

The bond on which complainant is seeking a recovery bears date of October 8, 1926, but, according to complainant's proof, it was not delivered to the complainant, the obligee, until a day after December 10, 1926, and before May 22, 1926. There is some evidence that the bond was delivered to complainant earlier than December 10, 1926, but defendant, through its counsel, expresses a willingness to concede the correctness of complainant's proof on this point, and we so find.

Complainant is seeking to recover in this case the amount of money which it alleges it had advanced to the David-Mathis Motor Company on six automobiles—usually referred to in the record as "cars"—which cars, together with the sum of money owing to complainant by the David-Mathis Motor Company on each of said cars, are described in the bill as follows:

| "Chevrolet | Coach | Motor | #2719878 | Serial | #9V-66298 | $548.00 |
|---|---|---|---|---|---|---|
| " | Touring | " | #2867324 | " | #9V-82566 | 454.00 |
| " | Sedan | " | #2825246 | " | #IV-72087 | 612.00 |
| " | Touring | " | #2841368 | " | #9V-78946 | 454.00 |
| " | Touring | " | #2867253 | " | #9V-82615 | 454.00 |
| " | Sedan | " | #2814007 | " | #IV-70619 | 612.00 |

TOTAL, $3134.00"

The first notice communicated to the defendant that the complainant claimed that it had delivered any cars to the David-Mathis Motor Company under the terms of the bond was contained in a letter of December 22, 1926, written by complainant to defendant, which letter contained a description of ten cars, including the six cars described in complainant's bill as above set forth, and which letter (omitting the description of the cars) reads as follows:

December 22, 1926.

"The Royal Indemnity Company,
"84 Williams Street,
"New York City, N. Y.
    "In Re Bond Essex No. 154323 issued to National Acceptance Company account David-Mathis Motor Company Lebanon, Tennessee.

526

"Gentlemen:—

"We beg to advise that we have delivered to the David-Mathis Motor Company at Lebanon, Tennessee, on Trust receipts, the following cars:"

(Here follows description of cars and signature of complainant).

The statement in the foregoing letter to the effect that complainant had delivered the six cars described in the bill in this case, or either of them, to the David-Mathis Motor Company was untrue. At the time said letter was written and mailed to defendant, complainant was the holder of instruments executed by the David-Mathis Motor Company purporting, on their face, to be trust receipts on the six cars in question, each of which described one of said cars and recited that the David-Mathis Motor Company had received same from the Chevrolet Motor Ohio Company, of Norwood, Ohio, acting for the National Acceptance Corporation, Nashville, Tennessee. The cars in question were not delivered to the David-Mathis Motor Company by anyone "acting for National Acceptance Corporation," but each of said cars had been previously delivered to the David-Mathis Motor Company by the Chevrolet Motor Ohio Company, acting for the General Motors Acceptance Corporation of Louisville, Kentucky, which latter company had title to said cars under trust receipts to secure advance of ninety percent of the purchase price thereof paid to the Chevrolet Motor Ohio Company by the General Motors Acceptance Corporation for the David-Mathis Motor Company.

With respect to the cars listed in complainant's bill, taking them separately, we find the following facts:

Complainant obtained its so-called trust receipt on Chevrolet Coach, Motor No. 2719878, Serial No. 9V-66298, from the David-Mathis Motor Company on September 28, 1926, and on that date paid draft of David-Mathis Motor Company in favor of itself for $548. This car was sold by David-Mathis Motor Company to the Batchelor Motor Company of Nashville on October 26, 1926, and was sold by the Batchelor Motor Company to the Randolph-Ragsdale Motor Company on November 18, 1926, and was sold by the latter company to Geo. R. Bethrum, of Nashville, on December 10, 1926. It was never in the possession of the David-Mathis Motor Company after October 26, 1926, and hence, was not in its possession or subject to its disposal or available for the satisfaction of complainant's claims on December 22, 1926.

Chevrolet Touring Car Motor No. 2867324, Serial No. 9V82566, was delivered to David-Mathis Motor Company under trust receipt to General Motors Acceptance Corporation on November 30, 1926. Complainant paid draft of David-Mathis Motor Company for $454 and took its so-called trust receipt thereon, executed by the latter

company, on December 3, 1926. This car was sold and delivered by the David-Mathis Motor Company to Ewing Tomlinson on January 4, 1927. A representative of the General Motors Acceptance Corporation was in the office of the David-Mathis Motor Company at the time of said sale to Tomlinson, and collected the proceeds of the sale in satisfaction of the trust receipt held by the General Motors Acceptance Corporation on said car.

Chevrolet Sedan Motor No. 2825246, Serial No. 1V-72087, was delivered to the David-Mathis Motor Company under trust receipt to the General Motors Acceptance Corporation on November 6, 1926. Complainant paid draft of David-Mathis Motor Company for $612 and took its so-called trust receipt thereon, executed by the David-Mathis Motor Company, on November 29, 1926. The David-Mathis Motor Company traded this Sedan to Draper and Draper, of Gainesboro, Tennessee, for a ''Chevrolet Coach'', and Draper & Draper sold the Sedan to Lex Williamson on January 1, 1927. The Sedan was not in the possession of the David-Mathis Motor Company after December 31, 1926. The Chevrolet Coach received by the David-Mathis Motor Company in exchange for said Sedan was later turned over to the complainant.

On January 13, 1927, the complainant wrote and mailed to the defendant a letter containing a descriptive list of the same ten cars described in the aforementioned letter of December 22, 1926, and in said letter of January 13, 1927 (referring to the aforesaid ten cars), complainant said, among other things, the following:

''A check of these cars was made on December 31st and on January 7th and in both cases all of the cars were found intact.''

The statement just quoted was manifestly not true, as will be seen from our findings above with reference to the history of the three cars which we have traced.

Chevrolet Touring Car Motor No. 2841368, Serial No. 9V-78946, was delivered to the David-Mathis Motor Company under trust receipt to General Motors Acceptance Corporation on November 20, 1926. Complainant paid draft of the David-Mathis Motor Company for $454 and took an alleged trust receipt thereon, executed by the David-Mathis Motor Company on December 6, 1926. The David-Mathis Motor Company did not pay to the General Motors Acceptance Corporation the sum which the latter company had advanced on this car, and on January 8, 1927, agents of the General Motors Acceptance Corporation took possession of this car, removed it to a garage in Murfreesboro, Tennessee, and on January 15, 1927, took it to Louisville, Kentucky, and it has not since been in the possession of the David-Mathis Motor Company or available for the

satisfaction of complainant's claims against the David-Mathis Motor Company.

Chevrolet Touring Car Motor No. 2867253, Serial No. 9V-82615, was delivered to the David-Mathis Motor Company under trust receipt to the General Motors Acceptance Corporation on November 30, 1926. Complainant took from the David-Mathis Motor Company a so-called trust receipt on this car on December 21, 1926, as a settlement of a claim of complainant against the David-Mathis Motor Company for a previous default of the latter company. This car was "repossessed" by the General Motors Acceptance Corporation at the same time, in the same manner and for the same reason as the car last above mentioned, and it likewise has not since that time been at the disposal of the David-Mathis Motor Company.

Chevrolet Sedan Motor No. 2814007, Serial No. 1V-70619, was delivered to the David-Mathis Motor Company under trust receipt to the General Motors Acceptance Corporation on November 30, 1926. Complainant received its alleged trust receipt on this car December 21, 1926. This latter trust receipt was also taken as a settlement of a previous default of the David-Mathis Motor Company. This car was likewise "repossessed" by the General Motors Acceptance Corporation at the same time, in the same manner and for the same reason as the last mentioned two cars.

The representation made by complainant to defendant in complainant's aforesaid letter of December 22, 1926, to the effect that complainant had "delivered to the David-Mathis Motor Company of Lebanon, Tennessee, on trust receipts" the cars enumerated and described in that letter was, so far as it referred to the cars involved in this suit, known to complainant to be untrue at the time it was made.

Likewise the representation made by complainant to defendant in complainant's aforesaid letter of January 13, 1927, that "a check of these cars" (meaning the cars enumerated and described in complainant's aforesaid letters of December 22, 1926, and January 13, 1927) "was made on December 31st and January 7th and in both cases all of the cars were found intact," was known to complainant to be untrue at the time it was made.

We think the foregoing findings, made in response to defendant's assignments, cover the material facts of the case not stated in the Chancellor's findings or in the previous part of this opinion relating to the complainant's assignments of error.

It results from our ruling on the complainant's assignments of error, as hereinbefore stated, that the decree of the chancery court dismissing complainant's bill at the cost of complainant and its

prosecution surety is affirmed, and a decree will be entered accordingly. The costs of the appeal will be adjudged against the complainant and the surety on its appeal bond.

Crownover and DeWitt, JJ., concur.