**NEW JERSEY INS. CO. v. ANDERSON et al.**
No. 2859.

Court of Civil Appeals of Texas. Beaumont.
Jan. 23, 1936.

Rehearing Denied Jan. 29, 1936.

Thompson, Knight, Baker & Harris, of Dallas, for plaintiff in error.

E. L. Reid, of Orange, for defendants in error.

WALKER, Chief Justice.

On the 30th day of May, 1930, appellant, New Jersey Insurance Company, and W. C. B. Anderson entered into the following agency agreement:

"New Jersey Insurance Company
"C. V. Meserole, President
"L. R. Bowden, Vice President

"Agency Agreement

"This memorandum of agreement made this 30th day of May, 1930, by and between the New Jersey Insurance Company and W. C. B. Anderson, agent, for the New Jersey Insurance Company for Orange, Texas and vicinity.

"In consideration of the compensation hereinafter named, the Agent agrees to faithfully represent the New Jersey Insur-

ance Company in all matters pertaining to and within the jurisdiction and scope of the agency; and with fidelity to serve the Company in the capacity as Agent, and to carry out to the best of my ability all instructions from the Company: And in consideration of such faithful services the New Jersey Insurance Company agrees to allow the Agent the following commissions: (this has been changed to 25% as of July 1—1930) 20% on Tornado business, (Farm Risks excepted) 20% on Dwellings, Churches, School Houses, Public Buildings and their contents, Brick and Stone Buildings, occupied for ordinary mercantile purposes (sprinklered or unsprinklered.) (Excludes buildings with manufacturing, upholstering, varnishing, steam printing or similar hazardous occupancy; also motion picture theaters, opera houses, livery stables or garages; also buildings communicating with or directly exposed by Special Hazards.) 20% on Stocks in Brick Mercantile Buildings. 20% on Frame, Iron-clad, Cement block or Stone Veneered Mercantiled Buildings and contents. 20% on all other classes. Commission on fire business to be figured on normal premium without reference to good fire record credit or bad fire record penalty. 25% on Automobile business.

"Builder's risks, use and occupancy and rent insurance, take the commission rate of a building of same occupancy.

"Special Hazard risks are enumerated on back of this form.

"Accounts are to be rendered for the business of each month so as to reach the Company's head office not later than the fifth day of the following month; the balance thereunder to be paid not later than 60 days after the end of the month for which the account is rendered. The Company will not allow any charges other than the commissions agreed upon.

"It is further understood and agreed that this Agreement shall continue from year to year, unless terminated by either party. The right to resignation or removal at any time being recognized by both parties.

"This agreement takes the place of and abrogates any contract, agreement or understanding whether verbal or written of prior date between the parties mentioned herein.

"In witness whereof: This Agreement. has been signed in duplicate by the parties hereto, the year and date first above written.

"New Jersey Insurance Company
"Pattillo & Goudelock, State Agents
      "By Olin L. Pattillo
"W. C. B. Anderson, Agent."

To secure appellant in the discharge of his agency duties, W. C. B. Anderson executed and delivered to appellant the following bond, with Dave Nelson and W. M. Reid as sureties:

"Agency Bond

"Know all men by these presents, That we, W. C. B. Anderson of Orange, in the State of Texas as principal, and Dave Nelson, of Orange in the said State, and W. M. Reid, of Orange in the said State, as sureties, are jointly and severally held and firmly bound unto the New Jersey Insurance Company, Newark, N. J.

"Each in the just and full sum of one thousand five hundred and no/100 Dollars, lawful money of the United States of America, to be paid to the said New Jersey Insurance Company or to its assigns or legal representatives; for which payment, well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents. Sealed with our seals and dated the ——— day of ——— in the year one thousand nine hundred and Thirty

"Whereas, the above named W. C. B. Anderson has been selected and is about to be appointed the Agent of the said New Jersey Insurance Company for Orange, in the County of Orange, and State of Texas and

"Whereas, said appointment is upon the condition that the said W. C. B. Anderson shall furnish sureties for the faithful performance of his duties as such agent, in the manner hereinafter provided and

"Whereas, the above bounden W. C. B. Anderson and Dave Nelson and W. M. Reid in consideration of such appointment being made, and of the sum of One Dollar to them and each of them duly paid have agreed to become such sureties.

"Now therefore, the condition of this obligation is such, that if the said W. C. B. Anderson shall in all respects observe and fulfill the instructions of the said Company, which may be given to him in relation to the said Agency, either through its officers, or through any of its General, Special or State Agents, and shall duly and properly account for and pay over to said Company all premiums on Policies of insurance issued by him, and all moneys

which may at any time come into his hands or pass under his control as such Agent from any source whatsoever; and shall apply all sums of money or funds which he may receive for the payment of losses, or other purposes, in such manner as he may be instructed by said Company; and shall also duly and properly account for all goods, chattels, or other property which may come into his hand or possession, or under his control, for, and on behalf of, the said New Jersey Insurance Company and shall keep true and correct books of account, and make regular and full and correct reports of the business transacted by him for the said Company; and shall in all respects well and faithfully discharge and perform his duties as such Agent; and shall, upon termination of his said Agency from any cause whatsoever, deliver up and hand over all moneys, books, accounts memoranda, property, effects and other things belonging to the said New Jersey Insurance or connected with or growing out of the said Agency, to his successor in office, or to such person or persons as the said New Jersey Insurance Company, or any of its General, Special, or State Agents, shall order and direct, and shall reimburse said Company for all attorneys fees and extra expenses occasioned by any delinquency or failure to comply with the foregoing conditions; then this obligation to be void, otherwise to remain in full force and virtue.

"The said suret— waiving notice (as to time the same shall be given) of any failure on the part of said Agent, to faithfully perform any of the duties, or obligations aforesaid.

"Signed, Sealed and delivered in the presence of
"Lucile Prejean
"Georgia Belile

|   |   |
|---|---|
| "W. C. B. Anderson | [L. S.] |
| "Dave Nelson | [L. S.] |
| "W. M. Reid | [L. S.] |

"Witness     Mildred Robison."

After the 5th of January, 1931, exact date not shown, appellant canceled Anderson's agency contract, and on the 7th day of May, 1931, after due notice to the sureties, Nelson and Reid, that Anderson was in default and the amount of his default, filed suit against Anderson and his sureties for the sum of $1,274.85, the amount of the default, together with prayer for reasonable attorney's fees in the sum of $250. Anderson made no answer. The nature of the answer of the sureties will be given in the discussion of the propositions of error. The trial was to the court without a jury with judgment in favor of appellant against Anderson for the relief prayed for as against him, and in favor of the sureties that they go hence without day and recover their costs. No conclusions of law or fact were requested or filed; hence it is necessary to review the facts in relation to all contentions made by the sureties in their answer.

Anderson wrote insurance for appellant continuously from May 30, 1930, to February 2, 1931. As required by his agency agreement, he filed daily reports for the month of June and a monthly report for that month. He filed no subsequent reports until January, 1931, and made no remittance on his account until December 16, 1930. Appellant knew that Anderson was not making reports, but made no protest to him and gave no notice to sureties to the effect that Anderson was not making the reports called for by his agency agreement.

■ The agreement of the sureties, which was part of the bond, "waiving notice (as to the time the same should be given) of any failure on the part of said agent, to faithfully perform any of the duties, or obligations aforesaid," relieved appellant of the duty of giving notice to the sureties of any default by Anderson. The following Texas authorities construing waivers in commercial paper are interestingly in point: Brinker v. First National Bank of Cleveland, Okl. (Tex.Com. App.) 37 S.W.(2d) 136; Wall v. Reimers (Tex.Civ.App.) 79 S.W.(2d) 142; Sharpe v. National Bank of Commerce (Tex.Civ. App.) 272 S.W. 321; State National Bank of Ft. Worth v. Vickery (Tex.Com.App.) 206 S.W. 841; Jackson v. Home National Bank of Baird (Tex.Civ.App.) 185 S.W. 893; National Bank of Commerce v. Kenney, 98 Tex. 293, 83 S.W. 368. Hartford Fire Insurance Co. v. Casey, 196 Mo.App. 291, 191 S.W. 1072, a Missouri case, involved an insurance agent's bond on all fours with the bond in issue.

But appellees say further that appellant and Anderson, by mutual agreement, created a novation in the original agency contract, requiring daily and monthly reports, by which novation Anderson was relieved of the duty of making these reports.

On this theory of appellees' answer we take the following statement from their brief: ·

"E. G. Crasper, witness for plaintiff in error, testified:

"That he was auditor for New Jersey Insurance Company. That the agent made daily reports to the company but there were quite a few policies written for which the company did not receive daily reports until some time after the policies were issued and the State agent made a special trip to Orange to secure copies of these reports. That such daily reports were exact copies of the policies issued. That according to the contract with this agent, the agent was supposed to make up at the end of each month an account current showing the total business written during that month brought down to a net balance due the company, the company only received an account for the month of June directly from the agent. That the balance due from Anderson is based upon an audit made from the agent's records and daily reports.

"Cross Examination

"No daily reports were received from Anderson for the months of July, August, September, October, November and December, 1930. The Company accepted periodical payments on the account, one for $700.00 December 16, 1930, one for $150.00 February 30, 1931. That the company did not know that Anderson was writing business and not making reports until just before the State agents went to Orange and closed the agency.

"When asked if the company protested Anderson's failure to make reports and payments and to produce copies of any such protests, this witness answered:

" 'Messrs. Pattillo and Goudelock, our State agents, are compensated for field work of this character and all telegrams and so forth with reference to reports and payments would go to the agent direct from their office.'

"Attached to plaintiff's petition as an exhibit is an alleged account showing the business done by the agent Anderson. Most of the items shown in the account do not show the dates of the transactions, but on Tr. page 9 dates are given showing that the agent wrote insurance in the months of July, November and December, 1930.

"Defendant W. C. B. Anderson, witness for plaintiff, on cross examination, testified:

"That from the time of his appointment in May, 1930, until he ceased to be agent for the company in February, 1931, he each month wrote business for the company; that the State agents for the company were Olin L. Pattillo and W. Y. Goudilock; that both of said State agents visited him in Orange; that they did not visit him on an unusual number of occasions; that the first visit was about sixty days after he was appointed agent. These visits from the State agents continued intermittently during the time he was agent for the company. When they visited him they checked the file of daily reports. He was furnished by the company blank insurance policies which were numbered. He filled these out and issued them to persons he insured for the company. These State agents, when they visited him, checked over the blank policies in his possession against his daily reports. In other words, the State agents knew exactly the number of policies and for what amounts they were issued at the various times they visited him.

"The monthly statement of the agent for the month of June, 1930, showing a balance due the company of $458.21 is shown S. F. 29–30.

"It was agreed that Defendants in Error neither knew of or consented to any change in the agent's duties or to any indulgence being shown to the agent by the company."

It is the law that silence on the part of the principal as to the failure of duty on the part of the agent may constitute ratification or acquiescence in such failure to discharge the duty and thereby make a material change in the contract of suretyship. Depot ·Realty Syndicate v. Enterprise Brewing Co., 87 Or. 560, 170 P. 294, L.R.A. 1918C, 1001; Cole-McIntyre-Norfleet Co. v. Holloway, 141 Tenn. 679, 214 S.W. 817, 7 A.L.R. 1683; Alabama Fidelity & Casualty Co. v. Alabama Fuel & Iron Co., 201 Ala. 625, 79 So. 57. It was the duty of appellant's state agents to see that Anderson made his reports and remittances in the manner and in the time called for in his contract. These agents knew that Anderson was writing insurance regularly and that he made no payment until December 16, 1930—if they did not know this in fact, the circumstances were suf-

ficient to require them to take notice of that fact. With this knowledge, appellant's general agents and its home office required Anderson to make neither payments nor reports, nor did they call upon him for payments or reports, but, in reckless disregard of any duty of good faith to the sureties, permitted him to be continuously in default in his contractual duties. On the authorities cited above, the trial court could have found that appellant ratified and acquiesced in Anderson's failure to live up to the contract, thereby working a material change in the contract to the prejudice of appellees. No conclusions of fact and law were requested on this proposition, and therefore, in support of the trial court's judgment in favor of appellees, we conclude that the trial court found in their favor on the issue of ratification and acquiescence. As a novation was created in the agency contract secured by the bond sued upon, appellees were released. In Evans v. Lawton (C.C.) 34 F. 233, it was held that a change permitting a salesman to sell on credit rather than for cash, as originally agreed upon, was a material alteration releasing the sureties. In Burley v. Hitt, 54 Mo.App. 272, it was held that authority given to the agent to retain money beyond the accounting period released the sureties. See, also, 21 R.C.L. 1069, § 109. The following authorities sustain the conclusion that, where the agent is released from his obligation to make reports at a stated time, the sureties are discharged: Singer Mfg. Co. v. Boyette, 74 Ark. 600, 86 S.W. 673, 109 Am.St.Rep. 104; Fidelity Mutual Life Ass'n v. Dewey, 83 Minn. 389, 86 N.W. 423, 54 L.R.A. 945; Tradesmen's National Bank v. National Surety Co., 169 N.Y. 563, 62 N.E. 670.

As the judgment of the lower court must be affirmed on the proposition just discussed, we pretermit a discussion of the following additional counter propositions advanced by appellees: (a) "The agency bond having provided that the agent should duly and properly account for and pay over to Plaintiff in Error all premiums on policies of insurance issued by him, the written agreement between Plaintiff in Error and its agent that the agent should pay the amounts due by him to Plaintiff in Error not later than sixty days after the end of the month for which the account was rendered was a material change in the obligation of the agent as expressed in the bond, detrimental to the interests of the sureties and discharged such sureties from liability on the bond."

In support of this counter proposition appellees cite Lucia v. Adams, 36 Tex.Civ.App. 454, 82 S.W. 335: (b) "The agency bond created the relation of trustee on the part of the agent to collect and pay over the premiums on all insurance written by him, and the act of Plaintiff in Error and the agent in entering into the written contract permitting the agent to use the premiums collected by him and to account to Plaintiff in Error on the basis of common debtor and creditor released the sureties from all liability on such bond, such change having been made without the assent of the sureties."

In support of this counter proposition appellees cite Estate of Rapp v. Phœnix Ins. Co., 113 Ill. 390, 55 Am.Rep. 427; 2 C.J. 722; Pioneer Mercantile Co. v. Freeman, 29 Ga.App. 11, 113 S.E. 21.

Affirmed.